Lockhurst *v.* West & others.

## JOHN LOCKHURST *vs.* ABNER WEST & others.

Since the passing of the act of congress of 1839, *c. 35,* as well as before, a debtor committed to a jail in this State, on execution issuing from a court of the United States, may be legally discharged from imprisonment on taking the poor debtors' oath before two commissioners appointed by the judge of the district court of the United States, pursuant to the act of congress of 1800, *c. 4,* on fifteen days' previous notice, by citation, being given to the execution creditor, pursuant to the act of congress of 1824, *c. 40,* to show cause why such oath should not be administered.

DEBT on a bond for the liberty of the jail limits. Writ dated June 4th 1841. The case was submitted to the court on the following facts agreed :

On the 18th day of January 1841, Abner West was committed to the jail in New Bedford, on an execution that issued from the district court of the United States for the district of Massachusetts, in favor of the present plaintiff, dated December 31st 1840, for the sum of $74·74 ; and on that day the said West, as principal, and the other defendants, as his sureties, executed the bond now in suit, in the form prescribed by the Rev Sts.

*c.* 97, § 63. On the 18th of February 1841, West petitioned the judge of said district court for the appointment of two persons as commissioners, to administer to him th⌐ oath prescribed for poor debtors by the law of the United States; and on the next day, Oliver Prescott and Eli Haskell were appointed for that purpose by said judge. On the 24th of the same February, said commissioners issued a notice to the creditor (the plaintiff) to appear and show cause, on the 12th of March then next, at 10 o'clock A. M., at the office of said Prescott; and this notice was served, on the same day, upon Ezra Bassett, the creditor's attorney. On the said 12th of March, said West appeared before the said commissioners, and counsel for the creditor also appeared, and objected that no sufficient notice had been served according to law. The commissioners overruled this objection, and said West was then examined on written interrogatories, by said creditor's counsel; after which the commissioners administered to said West the oath prescribed for poor debtors, and he immediately departed without the exterior limits of said jail.

This case was argued in 1842.

*E. Bassett,* for the plaintiff. This bond was given in pursuance of the U. S. *St.* 1828, *c.* 68, which is the only act of congress now in force, regulating this subject; *U. States* v. *Knight,* 3 Sumner, 358; and the question is, whether West was lawfully discharged by the proceedings had in this case. The plaintiff's ground is, that all the proceedings were irregular, and that the commissioners had no authority to administer the poor debtors' oath to West. They assumed to act by virtue of the U. S. *St.* 1800, *c.* 4, § 2. The plaintiff contends, that the proceedings should have been conformed to the provisions of the U. S. *St.* of February 28th 1839, *c.* 35, entitled "an act to abolish imprisonment for debt in certain cases." By this act, " no person shall be imprisoned for debt in any State, on process issuing out of a court of the United States, where, by the laws of such State, imprisonment for debt has been abolished; and where by the laws of a State imprisonment for debt shall be allowed, under certain conditions and restrictions, the same conditions and restrictions shall be applicable to the process issuing out of

the courts of the United States; and the same proceedings shall be had therein as are adopted in the courts of such State."

Under this statute, if West would avail himself of a lawful discharge, he must show that the proceedings in his case were such as are prescribed by our Rev. Sts. c. 98 ; that they were the same, in every respect, as are prescribed for a poor debtor confined on an execution issuing from our state courts.   Thirty days' notice of his intention to take the oath should have been given ; and the examination should have been had before two justices of the county, and each of the quorum.

The legislation of congress for the relief of persons imprisoned for debt on process from the courts of the United States, is as follows:   By *St.* 1789, *c.* 21, § 2, it was enacted that "the forms of writs and executions, except their style and modes of process, in the circuit and district courts, in suits at common law," should "be the same, in each State respectively, as " were then " used or allowed in the supreme courts of the same."   This act continued in force till that of 1792, *c.* 36, § 2, provided that " the forms of writs, executions and other process, except their style, and the forms and modes of proceeding in suits, in those of common law," should " be the same as " were then " used in the said courts respectively, in pursuance of the act " of 1789, *c.* 21.   The terms " modes of process," and " forms and modes of proceeding," as used in these acts, are said by Marshall, C. J. to be of the same import and to embrace the whole progress of the suit, and every trans· action in it, from its commencement to its termination, which does not take place *until the judgment shall be satisfied.*   This is to conform to the law of the State, as it existed at the time the acts went into operation.   *Wayman* v. *Southard,* 10 Wheat. 26 – 32.   At that time, congress had made no provision, in express terms, for persons imprisoned for debt on process issuing from the courts of the United States.   And it is believed that such persons, before the passing of *St.* 1800, *c.* 4, might avail themselves of the oath prescribed by the state practice then existing ; as that would be a part of " the forms and modes of

proceeding " in the suit.  That statute of 1800 prescribes the oath, and form and mode of proceedings, in express terms, for persons imprisoned for debt on process from a court of the United States ;  U. States v. Noah, 1 Paine, 368 ; and no provision seems to have been previously made, in express terms, for the discharge of such persons by taking a prescribed oath See also U. S. Sts. 1824, c. 3, and 40.

The St. of 1828, c. 68, § 3, provides that " writs of execution, and other final process on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, except their style, in each State respectively, as are now used in the courts of such State."  By this provision it was intended that persons, committed on execution from a court of the United States, should proceed in the same manner, and take the same oath, as persons committed on execution issuing from a state court.   " The proceedings thereupon " mean all the proceedings under the execution, until the same shall be satisfied.  In U. States v. Knight, 3 Sumner, 372, Story, J. says, " all proceedings consequent upon, and incident to, such writs of execution, and other final process, until the complete satisfaction and discharge thereof, are properly, in the sense of the act, proceedings on the execution or other final process ; and that therefore the proceedings to obtain the jail liberties, by a debtor imprisoned on such execution, or other final process, are ' proceedings thereupon,' within the scope and purview of the act."   This third section of the St. of 1828 repeals the St. of 1800, c. 4, so far as it prescribed the debtors' liberties, and the oath and proceedings to be had by poor debtors committed on execution.   So that, after the passing of St. of 1828, until the passing of St. 1839, c. 35, a person committed on an execution issuing from a court of the United States, was to avail himself of the oath prescribed for poor debtors by the law of the State ; and West should have proceeded accordingly, unless the St. of 1839 supersedes and repeals the St. of 1828.

It seems to have been the intention of congress, in passing the Sts. of 1828 and 1839, to put debtors imprisoned on process from the United States courts upon the same footing, in

all respects, with debtors imprisoned on process from the state courts, respectively.

*Colby*, for the defendants. The U. S. *Sts.* 1800, *c.* 4, and 1824, *c.* 40, and other statutes cited by the plaintiff's counsel, prior to that of 1839, *c.* 35, provide that defendants imprisoned on process issuing from a court of the United States may apply to the district court, and said court may issue a commission to two persons, empowering them to administer the poor debtors' oath, if they see fit; and that if the creditor, his agent or attorney, live within fifty miles of the place of imprisonment, only fifteen days' previous notice by citation shall be required. It these provisions are now in force, the proceedings under which West was discharged were perfectly regular. But the plaintiff contends that those statutes were repealed by that of 1839, *c.* 35, and that West should have proceeded, in every respect, as if he had been committed on an execution issuing from a court of this Commonwealth; and therefore, among other things, should have given thirty days' notice to the plaintiff.

The *St.* of 1839 was passed at the instance of a senator from New York, and is known to owe its origin to the singular state of things that existed in the city of New York before its passage. The State of New York had abolished imprisonment for debt. But creditors in that city evaded their own laws by going over the river into New Jersey, and bringing their actions in the courts of the United States. On obtaining execution, they detained their debtors fifteen days in confinement; so that the humane laws of the State were rendered of no effect. To remedy this state of things, the act of congress of 1839 was introduced and carried; and every body supposed, until the present plaintiff questioned it, that it was a law which would practically diminish imprisonment for debt, and enable debtors to obtain a more speedy discharge whenever they should be actually imprisoned.

It was unfortunate that the framer of this act did not look beyond the particular evil to be remedied, and did not provide expressly for cases that were to arise in other States. Still there can be no doubt of the purpose of the act. It abolished

imprisonment for debt, on process from the United States courts, in every State where it was already abolished on process from the state courts, and provided that the same conditions and restrictions should apply to executions issuing from the courts of the United States, that were applied to executions from the state courts; and this, doubtless, from the belief that the provisions of the state laws were milder than those of the laws of the United States then in force. Congress would not, at the instance of poor debtors in the city of New York, enact a law, with the intent to extend the term of imprisonment in all cases out of New York.

If the intent of congress was to meliorate the law, the single question is, whether that intent shall be carried into effect. The intention of the legislature, when discovered, must prevail; any rule of construction declared by previous acts to the contrary notwithstanding. *Brown* v. *Barry,* 3 Dall. 367. See also *U. States* v. *Fisher,* 2 Cranch, 386 *& seq. Wilkinson* v. *Leland,* 2 Pet. 662. In doubtful cases, the court should compare all the parts of a statute, and different statutes in *pari materia,* to ascertain the intention of the legislature. *The Elizabeth,* 1 Paine, 11. *Strode* v. *Stafford Justices,* 1 Brock. 165. Laws are construed strictly, to save a right or avoid a penalty; and liberally, to give a remedy or effect an object declared in the law. *Whitney* v. *Emmett,* 1 Bald. 316. See also *Whitney* v. *Whitney,* 14 Mass. 92. *The Harriet,* 1 Story R. 251.

But if the *St.* of 1839 be construed with the most technical strictness, and the precise meaning of particular words and phrases therein be inquired into, it will not bear the narrow construction which is given to it by the plaintiff. Even if thus construed, the statute must relate to the original imprisonment, and not to the mode and time of discharge, which must be left to the regulation of previous standing laws. In this Commonwealth, before a debtor can be arrested for debt, the creditor must make oath as to the amount of his demand, &c. In other States there are, doubtless, similar steps to be taken before the body can be seized; and these are restrictions and condi tions mentioned in the act of 1839. Is it not absurd to say

that when the statute declares that a man may be imprisoned "under certain conditions and restrictions," it means that he shall not be released from imprisonment except under the same conditions and restrictions? To imprison a man is one thing; to discharge him is another and a different thing.

The plaintiff relies on the last clause of the statute, viz. "the same proceedings shall be had therein as are adopted in the courts of such State." The answer is, that this, as well as the next preceding clause, where the words "process issuing out of the courts of the United States" are used, looks to the original imprisonment exclusively. The *courts* of Massachusetts have nothing to do with the time or mode of discharging a poor debtor. They have no "proceedings" to which such a debtor can conform. In the absence, therefore, of all regulations by the *courts*, there must be some mode of giving notice to a creditor, and of releasing a debtor. That mode is provided by previously existing statutes of the United States, which are not repealed, and which West has followed.

If, however, the defendants are wrong in all the foregoing positions, yet they insist that the plaintiff's appearance, by his counsel, before the commissioners, on the notice, was a waiver, in law, of the objection that the notice was irregularly given. It is the constant practice of the courts to rule that the appearance of a party, at the taking of a deposition, is a waiver of all objections to the form, time and manner of the notice; because the object of notice is accomplished by the party's appearance. So here, the object of notice, viz. to give the creditor an opportunity to be heard on his objections, was accomplished; and it comports with no man's notion of justice or law, that the debtor and his sureties should be subjected to a penalty or forfeiture by reason of a technical informality. See *Pattee* v. *Harrington*, 11 Pick. 221.

Besides; the plaintiff, when before the commissioners, objected to the notice, and the objection was overruled by them, after discussion. They were the only proper tribunal to try this question; and it is at least doubtful whether their decision can be reviewed in this form. After the objection was over-

ruled, the plaintiff proceeded to an examination of the debtor, without suggesting want of time for preparation, or absence of witnesses. If the plaintiff had left the commissioners to proceed *ex parte*, after they had decided that the notice was legal, there would have been more fairness in his present position.

SHAW, C. J. It appears to us that this case is substantially settled by a decision of the supreme court of the United States, made since this cause was argued. *Duncan* v. *Darst*, 17 Pet. 205, and 1 Howard, 301. That case distinctly recognizes the continued existence in force of the act of 1800, *c.* 4, (1 Story U. S. Laws, 715,) as a mode by which debtors imprisoned on execution, under process of the courts of the United States, may be discharged, though it may not be the exclusive mode.

We think it very clear, from the cases, that the laws of the United States, in adopting the modes of proceeding as pre-scribed by the state courts, do not thereby transfer the jurisdiction to state courts or state magistrates, but adopt similar modes of proceeding, to be pursued by the courts, magistrates and officers of the United States, in like cases. As, for instance, when by the law of the State, a particular mode of proceeding is to be pursued by a sheriff or his deputy, in taking and dis-posing of property, or in arresting a defendant, a similar mode of proceeding shall be adopted by the marshal of the United States, or his deputy. But when particular authorities are given, and directions addressed to the officers of the State, such law is not adopted by the process acts of the United States; because they cannot be applied, and because they have no power over such state officers. *Wayman* v. *Southard*, 10 Wheat. 1, 27. *Beers* v. *Haughton*, 9 Pet. 329. *U. States* v. *Knight*, 3 Sumner, 358, and 14 Pet. 301. *Amis* v. *Smith*, 16 Pet. 303.

The U. S. *St.* of 1800, *c.* 4, § 2, provides the form of the poor debtors' oath, to be administered by the judge of the dis-trict court, or, in case there shall be no judge within twenty miles of the jail, then by two commissioners, to be appointed by him; the creditor, his agent or attorney, if within one hun-dred miles, to have thirty days' notice. The U. S. *St.* of 1824, *c.* 3, (3 Story U. S. Laws, 1932,) provides that the oath may

be administered by any judge of the supreme court of the United States, or by the district judge for the district within which the debtor is imprisoned, or by any person or persons commissioned by either of them. The U. S. *St.* of 1824, *c.* 40, (3 Story U. S. Laws, 1939,) provides for issuing a citation, and makes fifteen days' notice sufficient, when the creditor is within fifty miles. With these alterations, the act of 1800, *c.* 4, is still in force, so far that persons, discharged from imprisonment by the taking of the oath before .commissioners, as therein provided, are lawfully discharged. Then the only ques tion is, whether this was repealed by the United States statute of February 28th 1839, abolishing imprisonment for debt in certain cases. And we are clearly of opinion that this does not repeal the former law. Certainly it does not in terms ; and there is no ground to maintain that it does so by implication. It provides for the entire abolition of imprisonment for debt, under process from the courts of the United States, in every State where it is abolished by the laws of the State ; and where it is allowed by the laws of a State, " under certain conditions and restrictions, the same conditions and restrictions shall be applicable, and the same proceedings shall be had therein as are adopted in the courts of such State." The plaintiff contends for a literal construction of this last clause, and maintains that by " the same proceedings " must be understood that the proceedings must be had and conducted by the same officers, that is, the officers and magistrates of the State, and that thus is repealed, by implication, the power before conferred on United States judges, and commissioners appointed by them.

This, in our view, would be a most strained construction. Strictly speaking, this law does not apply to the mode of discharge from imprisonment. The intention of congress is manifest, to apply as well to mesne process as to execution ; and when, by the state laws, imprisonment is allowable in certain cases only — as where the debtor is going out of the State — this statute confines the process from federal courts to the same cases. So when affidavit is required, and the like. According to the literal construction cortended for by the plaintiff, the process

from courts of the United States, since February 1839, whether on mesne process or execution, must be served by a sheriff of the county or his deputy, and not by a marshal. The only construction, which will reconcile the act of 1839 with a long course of cases from 1789 to the present time, is, to hold that the law of the United States, in adopting by legislation the processes of state courts, and the same proceedings under them which are directed to be had in the state courts, adopts them, so far as they are analogous and applicable, and so far as corresponding officers of the United States can execute them. But it does not, and congress could not, transfer the jurisdiction of the United States to the State; nor could they require or authorize the officers of the State to execute the judgments of the courts of the United States. *Prigg* v. *Commonwealth of Pennsylvania*, 16 Pet. 539. It is true that the proceedings under the judgments of courts of the United States may sometimes be defeated by proceedings under process from the state courts; but this is a collateral and incidental, and not the direct, result of the process of a state court. If, for instance, property has been already taken on execution, by process from a state court, it cannot be taken by a similar process from a court of the United States. So when any rights have been acquired by judgment or process of the courts of a State, such rights cannot be defeated by the judgments and processes of the courts of the United States. This results necessarily from the concurrent jurisdiction of these courts, as established by the constitution and laws both of the States and of the United States, the effect of which is, that the one which first takes effect must necessarily supersede the other, when both cannot have full operation.

In the present case, we are of opinion that the act of the United States of 1839, abolishing or modifying the power of imprisonment for debt, did not, in this State, supersede the former provisions of the law of the United States providing for the appointment of commissioners to administer the poor debtors' oath; that West was duly and lawfully discharged from his imprisonment; and that the condition of his bond was not broken by his going at large after such discharge.

*Judgment for the defendants*