Mr Justice Story
delivered the opinion of the Court.
This is a writ of error to the judgment, of the circuit court ■ for the district of Ohio.
*356 The material facts are these. In June 1830, the plaintiffs in error (who are citizens of New York) brought an action of assumpsit in the circuit court of Ohio, against one Joseph Harris and Cornelius V. Harris, and at the December term of the court, recovered judgment for 2818 dollars and 86 cents, and costs. In this action the defendant, in error became special bail by recognizance, viz., that the Ha iris’s should pay and satisfy the judgment recovered against them, or render themselves into the custody of the marshal of the district of Ohio.' In October 1831, a writ of capias ad satisfaciendum was issued upon the same judgment, directed to -tlie marshal; who, at the December term 1831, returned that the Harris’s were not to be found. At the same term the circuit court adopted the following rule, “ that if a defendant, upon a capias, does not give sufficient appearance bail, be shall be committed to prison, to remain until discharged by due course of law. But under neither mesne nor final process, shall any individual be. kept imprisoned, who, under the insolvent law of the state, has for such demand been released from inprisonment.” In February 1831, Cornelius V. Harris was duly discharged from imprisonment for all his debts, under the insolvent law of Ohio, passed in 1831 ; and in February 1832, Joseph Harris was in like manner discharged. In December 1832, the plaintiffs in error commenced the present action of debt, upon the recognizance of bail, against the defendant in error; stating, in the declaration, the original judgment, the defendant becoming special bail, and the return of the execution “ Not found.” The defendant, among other pleas, pleaded the discharge of the Harris’s under the insolvent law of Ohio of 1831, and the rule of the circuit court, above mentioned, in bar of the action. The plaintiffs demurred to the plea, and, upon joinder in demurrer, the circuit court gave judgment for the defendant; and the present writ of error is brought to revise that judgment.
The question now before this court is, whether the plea contains a substantial defence to the action of debt brought upon the recognizance of special bail. In order to'clear the case of embarrassment from collateral matters, it may be proper to state, that the recognizance of special bail being a part of the proceedings on a suit; and subject to the regulation of the court, the nature, extent and limitations of the responsibility *357 created thereby, are to be decided, not by a mere examination of the terms of the instrument, but by a refeience to the known rules of the court and the principles of law applicable thereto. 'Whatever in the sense of those rules and principles will constitute a discharge of the liability of the .special bail, must be deemed included within the purview' of the instrument, as much as if it were expressly stated. Now, by-the rules of the circuit court of Ohio, adopted as early as January term 1808, the liability of special bail was provided for and limited ; and it was declared, that special bail may surrender their principal at any time before or after judgment against the principal; provided such surrender shall be before a return of a scire facias executed, or a second scire facias nihil, against the bail. And- this in fact constituted a part of the law of Oiiio at the time whén the present recognizance was given; for in the Revised Laws of 1823,1824, (22d vol. of Ohio Laws 58) it is enacted that, subsequent to the return of the capias ad respondendum, the defendant may render .himself or be rendered in discharge of his bail, either before or after judgment ; provided such render be made at or before the appearance day of the first scire facias against the bail returned scire feci, or of the second scire facias returned nihil, or of the capias ad respondendum or summons in an action of debt against the bail or his recognizance returned seived ; and not after. This act' was in force at the time of the passage of the act of congress of the 19th of May 1828, ch. 68, and must, therefore, be deemed as a part of the “modes of proceeding” in suits, to have been adopted by it. So that the surrender of the principal by the special bail within the time thus prescribed, is not a mere matter of favour of the court, but is strictly a matter of legal right.
And this constitutes an answer to that part of the argument at the bar, founded upon the notion, that by the return of the-capias ad satisfaciendum, the plaintiffs had acquired a fixed and absolute right against the bail; not to be affected by any rules of the court. So far from the right being absolute, it was vested sub modo only, and liable to be defeated in the events prescribed by the prior rules of the court, and the statute of Ohio above, referred to. It is true, that it has been said that by a return of non est inventus on a capias ad satisfaciendum,
*358 the'bail are fixed; but this language is not strictly accurate ;■ even in courts acting professedly under the common law, and independently of statute. ' Lord Ellenbdipugh, in Mannin v. Partridge, 14 East’s Rep. 599, remarked that “bail were to some purposes said to be fixed by the return of non est inven-tus upon the capias ad satisfaciendum; but if they have, by the indulgence of the court, time to rendter the principal until the appearance day of the last scire facias against, them, and which they have the capacity of using, they-cannot be con-1 sidered as completely and definitively fixed till that period.” •And so much are the proceedings against bail deemed a matter subject.to the regulation and practice of the court, that the court will not hesitate to relieve them in a summary manner, and direct an. exoneretur to be entered in such cases of indulgence, as well as in cases of strict right. But there is this distinction : that wheie the bail weré entitled to be discharged, ex debito justitise, they may not only apply for an exoneretur by way of summary proceeding; but they may plead the matter as a bar to a. suit in their defence. But where the discharge is matter of indulgence only, the application is to the discretion of the court, and an exoneretur cannot be insisted on except by way of motion.
And this leads us to the remark, that where the party is, by the practice of the court, entitled to an exoneretur without, a positive surrender of the principal, according- to the terms of the recognizance, he is, á fortiori, entitled to' insist on it by way of defence, where he is entitled, ex debito justitise, to surrender the principal. Now, the doctrine is clearly established, that where the principal would be entitled to an immediate and unconditional discharge, if he had been surrendered, there (he bail are entitled to relief by entering an exoneretur, without any surrender. This was decided in Mannin v. Partridge, 14 East 599 ; Boggs v. Teackle, 5 Binn. Rep. 332; and Olcott v. Lilly, 4 Johns. Rep. 407. And, a fortiori, this doctrine must apply where the law prohibits the party from being imprisoned at all; or where, by the positive operation of law, a surrender is prevented. So that there can be no doubt, that the» present plea is a good bar to the suit, notwithstanding, there has been no surrender; if by law the principal could nbt, upon such surrender, have been imprisoned at all.
*359 This constitutes the turning point of the case, and to the consideration of it we.«.shall now proceed. In the first place, there is no doubt, that the legislature of Ohio possessed full constitutional-.authority to pass laws whereby insolvent debtors should be released, or protected from arrest or imprisonment of théir persons on any action for any debt or demand due by them. The right to imprison constitutes .no part, of the contract ; .and a discharge of the person of the party from imprisonment, does not impair the obligation of the contract, but leaves it in full force against his property and effects. This was clearly settled by this court iu the cases of Sturges v. Crowninshield, 4 Wheat. Rep. 200; and Mason v. Haile, 12 Wheat. Rep. 370. In the next place, it is equally clear, that such state laws have no operation, proprio vigore,.upon the process or proceedings in the courts of the United States ; for the reasons so forcibly stated by Mr Justice Johnson, in delivering the final opinion of the court in Ogden v. Saunders, 12 Wheat. Rep. 213 ; and by Mr Chief Justice Marshall in delivering the opinion of the court in Wayman v. Southard, 10 Wheat. Rep. 1; and by Mr Justice Thompson in delivering the like opinion in the Bank of the United States v. Halstead, 10 Wheat. Rep. 51.
Slate laws cannot control the exercise of the powers of the national government, or in any manner limit -or affect the operation of the process or proceedings in the national courts. The whole efficacy of such laws in the courts of the United States, depends upon the enactments of congress. So far as they are adopted by congress they are obligatory. Beyond this, they have no controlling influence. Congress may adopt such state laws directly by a substantive enactment, or they may confide the authority to adopt them to the courts of the United States. Examples of both sorts exist in the national legislation. The process act of 1789, ch. 21, expressly adopted the forms of writs and modes of process of the state courts, in suits at common law. The act of 1792, ch. 36, permanently continued the forms of writs, executions and other process, and the forms and modes of proceeding in suits at common law, then in use in the courts of the United States, under the process act of 1789 ; but with this remarkable difference, that they were subject to such alterations and additions as the said *360 courts respectively should, in their discretion, deem expedient; or to such, regulations as the supreme court of the United States should think proper, lrom time to time, by rule to prescribe to any circuit or district court concerning the same. The constitutional validity and extent of the power thus given to the courts of the United States, to make alterations and additions in the process, as well as in the modes of- proceeding' in suits, was fully considered by this court in the cases of Wayman v. Southard, 10 Wheat. Rep. 1; and the Bank of the United States v. Halstead, 10 Wheat. Rep. 51. It was there .held, that this delegation of power by congress was perfectly constitutional; that'the power to alter and add to the process and modes of proceeding in a suit, embraced the whole progress of such suit, and every transaction in it from its commencement to its termination, and until the judgment should be satisfied ; and that it authorized the courts to prescribe and regulate the conduct of the officer in the execution of final process, in giving effect to its judgment. And it was emphatically laid dowii, that "a general superintendence over this subject seems to be properly within the'judicial province, and has always been so considered and that “ this provision enables the courts of the union to make such improvements in its forms and modes of proceeding as experience may suggest; and especially to adopt such state laws on this subject, as might vary to advantage the forms and modes of proceeding, which prevailed in September 1789.” The result of this doctrine, as practically expounded or applied in the case of the Bank of the United States v. Halstead, is, that the courts may, by their rules, not only alter the forms, but the effect and operation of the process, whether mesne Or final, and the modes of proceeding under it; so that it may reach property not liable, in 1789, by the state lav/s to be taken in execution, or may exempt property, which was not then exempted, but has been exempted, by subsequent state laws,
If, therefore, the present case stood upon the mere ground of the authority conferred on the courts, of the United States by the acts of 1789 and 1792, there would seem to be no solid objection to the authority by the circuit court of Ohio to make the rule referred to in the pleadings. • It is no more than a-, regulation of the modes of proceeding in a suit, in order to con-' *361 form to the state law of Ohio, passe chin 1831, for the relief of insolvent debtors. A regulation of the proceedings upon bail bonds and recognizances, and prescribing the conduct of the-marshal in.matters touching the same; seems to be as completely within-the scope of the authority, as any which could' be'selected.
But ini fact the present case does not depend upon the provisions of the acts of 1789 or 1792 ; but it is directly within and governed by the process act of the 19th of May 1828, ch. 68. That act in the first section declares, that the forms of mesne process, and the forms and modes of proceeding in suits at .common law in the courts of the United States, held in states ad- ■ mitted into the union since 1789, (as the state of Ohio has 1 been) shall be tire same in each of the said states, respectively, as were then used in the highest court of original and general jurisdiction in the.same; subject to such alterations and additions as the said courts of the United States, respectively, shall, in their discretion, deem expedient, or to such regulations as the-supreme court shall think proper from time to time, by rules, to prescribe to any circuit or district court concerning the same. The third section declares, that writs of execution and other final process issued on judgments and decrees rendered in any courts of the United States, and “ the proceedings thereupon,” shall be the same in each state, respectively, as are now used in the courts of such state, &c. &c. Provided, however, that it shall be in the power of the courts, if they see fit in their discretion, by rules of court, so far to alter final process in such courts, as to conform the same to any change which may be adopted by the legislature of the respective state, for the state courts.
This act was made after the decisions in Wayman v. Southard, and the Bank of the United States v. Halstead, 10 Wheat. 1 and 51, and was manifestly intended to confirm the construction given in those cases to the acts of 1789 and 1792, and to continue the like powers in the courts to alter and add to the processes whether mesne or final, and to regulate the modes of proceedings in suits and upon processes, as had been held to exist under those acts. The language employed seems to have been designed to put at rest all future doubts upon the subject. But the material consideration now to be taken notice of, is *362 that the act of 1828 expressly adopts the mesne processes and modes of proceeding in suits at common law, then' existing in the highest state courts under the state laws ; which of course included all the regulations of the state laws as to bail, and exemptions of the party from arrest and imprisonment. In regard also to writs of execution and other final process, and “ the proceedings thereupon,” it adopts an equally comprehensive language, and declares that they shall be the same as were then used in the courts of the state. Now, the words “ the proceedings on the writs of execution and other final process,” must, from their very import, be construed to include all the laws which regulate the rights, duties and conduct of officers in the service of such process, according to its exigency, upon the person' or property of the execution debtor, and also all the exemptions from arrest or imprisonment under such process created by those laws.
We ar.e then led to the inquiry, what were the laws of Ohio in regard to insolvent debtors at the time of the passage of the act of 1828. By the insolvent act of Ohio, of the 23d of February 1824 (Laws of Ohio, Revision of 1824, vol. 22, sect. 8, 9, p. 327, 328), which continued in force until it was repealed and superseded by the insolvent act of. 1831, it is provided, that the certificate of the commissioner of insolvents, duly obtained, shall entitle the insolvent, if in custody upon mesne or final process in any civil action, to an immediate discharge therefrom, upon his complying with the requisites of the act. And it is further provided, that the final certificate of the court of common pleas, duly obtained, shall protect the insolvent for ever after from imprisonment for any suit or cause of action, debt or demand mentioned in the schedule given in under the insolvent proceedings; and a penalty is also inflicted upon any sheriff or other officer, who should knowingly or wilfully arrest any person contrary to this provision. The act of 1831 (Laws of Ohio, Revision'of 1831, vol. 29, sec. 21, 36, p. 333, 336) contains a similar provision, protecting the insolvent under like circumstances from imprisonment, and making the sheriff or other officer, who shall arrest him contrary to the act, liable to an action of trespass. Now, the' repeal of the act of 1824, by the act of 1831, pould have no legal effect to change the existing forms of mesne or ftnat process, Or the modes of proceeding, thereoñln the courts' *363 of the United States, as adopted by congress, or to vary the powers of the same courts in relation thereto ; but the same remained in full forcé", as if no such repeal had taken place. The rule of the circuit court is in perfect coincidence with the state laws existing in 1828; and if it were not, the circuit court had authority, by the .very-provisions of the act of 1828, to make such a rule, as a regulation of the proceedings upon final process, so as to conform the same to those of-the state laws on the same subject.
Upon these grounds, without going into a more elaborate review. of the principles applicable to the case, we are of opinion that the judgment of the circuit court was right; and that it ought to be affirmed with costs.