## UNITED STATES v. FORBES.

(District Court, M. D. Alabama, N. D., at Montgomery.   June 25, 1919.)

### No. 2077.

1. EMINENT DOMAIN ☞68—CONDEMNATION BY GOVERNMENT—NECESSITY—RE-VIEW.
   In a proceeding by the Secretary of War, under Act Cong. July 2, 1917 (Comp. St. 1918, § 6911a), to condemn land for military purposes, the courts are not authorized to question the necessity for the condemnation, Congress having bestowed upon such official the power to determine the necessity.

2. EMINENT DOMAIN ☞6—CONDEMNATION BY GOVERNMENT—NECESSITY—DEL-EGATION OF POWER.
   It is competent for Congress to delegate the authority to decide upon the necessity for taking land for public purposes.

3. EMINENT DOMAIN ☞68—CONDEMNATION BY GOVERNMENT—REVIEW BY COURT.
   Where the Secretary of War has instituted condemnation proceedings to obtain the fee, and has erected expensive improvements on the land, it is not for the court to determine as to whether the property will be used by the Secretary of War permanently, temporarily, or for the purpose for which the condemnation proceedings were brought.

4. EMINENT DOMAIN ☞320—RIGHTS OF PARTIES—TIME OF TAKING EFFECT.
   In a proceeding by the Secretary of War to condemn land for military purposes, the rights of the parties became fixed at time petition for condemnation was granted, the only matter remaining to be decided being the amount of compensation to be awarded the owner.

5. EMINENT DOMAIN ☞171—DEFENSES.
   In a proceeding by the Secretary of War to condemn land upon which to establish a training camp, it is no concern of the landowner that the government has agreed with a city to turn the property over to the latter after having acquired title, or that the government is to retain title and the city is to pay the damages awarded.

6. EVIDENCE ☞34—JUDICIAL NOTICE—LAWS OF THE UNITED STATES.
   Courts will take judicial notice of the laws of the United States.

7. UNITED STATES ☞60—SECRETARY OF WAR—POWERS.
   Unless such authority is positively conferred by Congress on the Secretary of War, he cannot sell or transfer to a city or individual land belonging to the government.

8. EMINENT DOMAIN ☞68—CONDEMNATION BY GOVERNMENT—REVIEW BY COURTS.
   After the Secretary of War has exercised the authority vested in him by Act Cong. July 2, 1917 (Comp. St. 1918, § 6911a), to determine that there is a necessity to condemn land for military purposes and condemnation proceedings have been resorted to, an award made, and an appeal from the award is taken to a jury, it is not within the province of the court to say what shall be done with the land or what use it shall be put to, such right being reserved to Congress.

9. COURTS ☞347—CONFORMITY ACT—MOTION TO STRIKE PLEA.
   A motion to strike is proper where a plea is irregular, wanting in every element of legal defense, frivolous, or where the plea is not sworn to, when verification is required, or lacks signature of counsel and the like, even where the action arises in a state where statute does not describe the office of a motion to strike the plea, a federal court having the inherent power to so shape the adjective law that the real questions of

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

substantive law which control the case can be fairly and plainly presented and decided.

**10. PLEADING ⊜210—"SPEAKING DEMURRER."**

A demurrer which sets up a ground dehors the record, or a ground which, to be sustained, requires reference to facts not appearing on the face of the pleading attacked, is a speaking demurrer, and is not good.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Speaking Demurrer.]

**11. PLEADING ⊜194(1), 354(2)—DEMURRER—MOTION TO STRIKE.**

In Alabama, if a plea contains any matter of defense, however defectively it may be stated, demurrer must be resorted to; but, if the plea contains not a single element of defense, then a motion to strike the plea should be employed.

**12. COURTS ⊜356—CONFORMITY ACT—CONDEMNATION BY GOVERNMENT—RAISING QUESTION ON APPEAL.**

In a proceeding in a federal court by the Secretary of War under Act Cong. July 2, 1917 (Comp. St. 1918, § 6911a), to condemn land in Alabama for military purposes, the landowner cannot, on appeal from the award of commissioners and for the first time, file pleas denying the right to condemn, or the necessity, when the matter has already been decided by the court at a former hearing of the cause, when he was present by his attorneys, and when and where he made no objection to the granting of a petition for condemnation; notwithstanding that the foregoing act requires such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted, and notwithstanding Code Ala. 1907, § 3875, providing that "on such appeal (to the circuit court and to a jury) the trial shall be de novo," and notwithstanding the Conformity Statute (Rev. St. § 914 [Comp. St. § 1537]).

At Law. Proceeding by the United States against A. G. Forbes to condemn land for military purposes. On motion by the government to strike certain pleas. Motion granted.

See, also, 250 Fed. 299.

Thomas D. Samford, U. S. Atty., of Opelika, Ala., Lee J. Clayton, Asst. U. S. Atty., of Eufaula, Ala., Wiley C. Hill, Sp. Asst. Atty. Gen., J. J. Hubbard, Chief of Disposal Branch, Real Estate Service, War Department, of Washington, D. C., and Maj. N. D. Ely, J. A. G. D., of Davenport, Iowa, for the United States.

Sidney J. Bowie, of Birmingham, Ala., and Ball & Beckwith, of Montgomery, Ala., for defendant Forbes.

HENRY D. CLAYTON, District Judge. This proceeding was begun by the United States on January 16, 1918, to condemn for military purposes, under the Act of Congress of July 2, 1917, c. 35, 40 Stat. 241 (Comp. St. 1918, § 6911a), entitled "An act to authorize condemnation proceedings of lands for military purposes," the fee in certain lands owned by the defendant and needed by the United States as the site for military training camp.

A day was set for the hearing of the petition, due notice was given to the defendant, and on the day set, February 6, 1918, the prayer of the petition was granted. Commissioners were appointed to assess the damages or compensation to which the owner of the lands is entitled. No objection to the petition, or to any of the proceedings, was

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

made by the defendant, who was present in court by attorneys. The order and judgment of condemnation recites that it appears "by affirmative evidence offered in open court that the allegations of said petition are true."

On April 13, 1918, after many weeks spent in the taking of testimony touching the value of the land sought to be condemned, at which hearings the defendant was present by attorney, the commissioners made their report to the court, and assessed the damages of the defendant at $58,055.55. And thereafter, on April 18, 1918, the court made and entered an order condemning the lands to the use of the United States upon payment of the ascertained compensation.

On May 11, 1918, the defendant, Forbes, appealed from the order of condemnation and the award of the commissioners.

The case now coming on for trial, the defendant has filed pleas numbered 1 to 12, both inclusive, and pleas marked from A to I, both inclusive. The pleas are very lengthy, but in substance, aver that the Secretary of War has not caused these proceedings to be instituted; that when the proceedings were instituted there was no necessity for condemning the fee to the lands; that since the commencement of the proceedings, and since the taking of the appeal, the government has determined to abandon the use of the lands for military purposes and for use as a military training camp; that the proceedings were not instituted for the use of the United States, but that their real object is to condemn the fee in the lands for the use of the city of Montgomery, Ala., near which city the camp is located, under an alleged contract with the city whereby the city agreed with the United States to furnish lands for use as a military training camp under a lease not expiring until 1920; that the city did not acquire or lease the land from the defendant, Forbes; and hence that the city agreed with the government that if the United States would condemn the lands the city would pay the judgment and costs.

The government now moves to strike the pleas filed by the defendant on the ground that they are frivolous, irrelevant, immaterial, filed too late, and that they present no legal answer to the petition.

The eighth ground of the government's motion to strike the pleas is as follows:

On, to wit. the 16th day of January, 1918, the petition or application in this cause was filed in this honorable court, seeking to condemn the lands mentioned therein, as well as the fee title thereto. Due notice was given to the defendant as provided by law, and a day set for the hearing of said application was fixed as made and provided for by law. The defendants, in their own proper persons and by attorneys, appeared, made no objection to the granting thereof, filed no pleas or pleadings of any kind thereto, and the said application was duly heard by this honorable court, and affirmative evidence made in open court that the allegations of said petition are true, and that it is necessary that the said lands be condemned for the purpose mentioned in said petition; and upon the hearing thereof and on, to wit, the 6th day of February, 1918, this honorable court, in strict accordance with the laws, made and entered a decree granting said application, and in strict accordance with the law appointed commissioners to assess the damages and compensation to which the said Forbes was entitled; and, said commissioners being duly qualified to act, proceeded to hear testimony; and the said Forbes appeared before the said commissioners, and without objection introduced a large number of

persons as witnesses to prove the damages and compensation to which he was entitled, and never questioned in any manner whatsoever the right, power, and authority of said commissioners to act as such; and said commissioners, after many witnesses were examined, and after viewing said lands in strict accordance with law, rendered an award; and thereafter the said Forbes claimed that he was dissatisfied with the amount of said award, and sought in this honorable court a trial by jury. Wherefore petitioner says that said pleas are not filed in due season and are filed too late."

[1] There appears to be a clear distinction between the adjudged cases brought under acts of the state Legislature by railroad companies, waterworks companies, and the like, and those adjudged cases where the United States has sought to condemn, under Act of Congress, lands for public use.

In the first class of cases the necessity for the condemnation seems to be a question for judicial determination. In the other class, to which class the case we are now trying belongs, the question of the necessity for the condemnation is not left to judicial determination, for this power was bestowed by Congress on the Secretary of War, the Secretary of the Treasury, or Secretary of the Interior, as the case may be; and the weight of authority sustains the proposition that the action of the official to whom this duty and discretion is delegated by Congress is not reviewable by any court.

In the case of the United States v. Certain Lands in Narragansett, R. I. (C. C.) 145 Fed. 654, the act of Congress made an appropriation for improving the Point of Judith Harbor of Refuge under the direction of the Secretary of War, and provided that the money appropriated should be applied "in extending the easterly shore or arm of the breakwater, and continuing it to the shore, with a view of providing a shelter for a landing place for the passengers, crews, and cargoes of vessels in distress, and other vessels, and for the lifeboats of the Point Judith life-saving service." Act March 3, 1905, c. 1482, 33 Stat. 1119.

The defendant denied that there was any power to condemn any more land than was needed to connect the shore arm of the breakwater with the shore itself, and the defendant also denied that the whole of the lands described in the petition for condemnation were requisite or necessary. It was contended that, in the absence of an express legislative act defining the extent of the property to be taken, the power to take was limited to the necessity of the case, and that the necessity of taking particular property was a question for the courts. In that case it was decided that the Secretary of War had a discretionary power conferred upon him by law, and that his discretion, when exercised, was not reviewable by the court. Citing Decatur v. Paulding, 14 Pet. 497, 10 L. Ed. 559, 609; Cooley on Const. Lim. (5th Ed.) 668, 669; Douglass v. Byrnes (C. C.) 59 Fed. 29, 32.

In the opinion of the court in the Narragansett Case it is said (145 Fed. 657): "It is well settled that it is not necessary that Congress itself should select the particular land." Citing Chappell v. United States, 160 U. S. 510, 16 Sup. Ct. 397, 40 L. Ed. 510; Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449. And I quote further: "Congress has provided for no judicial review of the judgment of the Secretary of War, and the right to such review does not arise by implication."

It was there held, also, that the extent to which private property can be taken for public use rests wholly in the legislative discretion, subject only to the condition that just compensation shall be made. Citing Shoemaker v. United States, 147 U. S. 282, 298, 13 Sup. Ct. 361, 37 L. Ed. 170.

[2] It is also competent to delegate the authority to decide upon the necessity for its taking. Cooley, Const. Lim. (5th Ed.) 668–670. As was said in the Narragansett Case, supra:

"While the taking of property must always be limited to the necessity of the case, and consequently no more can be appropriated in any instance than the proper tribunal shall adjudge to be needed for the particular use for which the appropriation is made, the Secretary of War is authorized by Congress to make the judgment as to what land is needed."

Again, in the case of the United States v. Burley (C. C.) 172 Fed. 615, in a proceeding by the United States to condemn land for reservoir purposes, under the Irrigation Act, Act of Congress June 17, 1902, c. 1093, 32 Stat. 388 (Comp. St. §§ 4700–4708), the court held that—

"Whether a more feasible plan of irrigation than the one adopted might be devised, or some other site selected for the reservoir, is immaterial; the determination of the proper government authorities being conclusive." (1st Headnote.)

And in the case of the United States v. O'Neill (D. C.) 198 Fed. 677, where the power conferred upon the Secretary of the Interior by the Reclamation Act (Irrigation Act), Act of Congress June 17, 1902, was to condemn lands necessary for use in constructing irrigation works, the court said:

" * * * It must be borne in mind that the petitioners here are not exercising in this proceeding the state's power, and therefore are not bound by the limitations and restrictions placed on that power; but they are exerting their own sovereign right, and the only restriction on the exercise of that right is that just compensation shall be made for private property taken for public use. Fifth Amendt. Const. U. S."

The court also declared:

"The question of necessity is political, and must be determined by Congress. 'When the use is public, the necessity or expedience of appropriating any particular property is not a subject of judicial cognizance.'"

Citing Boom Co. v. Patterson, 98 U. S. 403, 406, 25 L. Ed. 206; U. S. v. Jones, 109 U. S. 513, 518, 519, 3 Sup. Ct. 346, 27 L. Ed. 1015. And in the O'Neill Case, supra, it was held that—

" 'The question of necessity is not one of a judicial character, but rather one for determination by the lawmaking branch of the government.' Backus v. Depot Co., 169 U. S. 557, 568, 18 Sup. Ct. 445, 450, 42 L. Ed. 853. The legislative branch may delegate the determination of the question of necessity. The Reclamation Act imposes that duty on the Secretary of the Interior. * * * On the facts here presented, the conclusion is reached that the only inquiry for determination in limine is whether the contemplated purpose to which the lands sought to be condemned are to be devoted to is a public use."

And quoting from the case of Shoemaker v. United States, 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170, the court continued:

"If this question is decided in the affirmative, the judicial function is exhausted."

Other decisions of the federal courts, including the Supreme Court, uphold these principles.

This court, therefore, cannot review the discretion of the Secretary of War in causing this proceeding to be instituted through the duly authorized and responsible official of the government, the United States Attorney for this district, or in maintaining the suit after he has caused it to be brought. If he had the undoubted authority and discretion to cause the condemnation proceedings to be instituted, then, for the same reason, or perhaps for stronger reason, he has the right to prosecute and maintain the suit to a conclusion.

When the greatest autocratic power of all time was ruthlessly destroying the commerce of the seas, and noncombatants on land and sea, and was rapidly securing a strangle hold on the liberty of the world, it was certainly evident to us that undoubtedly the Secretary of War, under the act of Congress of July 2, 1917, c. 35, was vested with authority to determine the necessity of acquiring lands needed for military training camps, and upon such determination to cause proceedings to be instituted for that public purpose. The act also confers upon the Secretary of War authority to expropriate either a temporary or an absolute estate.

In the case at bar suit to expropriate the fee or absolute estate was brought, possession of the land has been taken, and large sums of public money have been expended on the lands for necessary buildings and other improvements. After a trial had been had and an award made, and an appeal from the award had been taken, the defendant now insists that the lands are no longer needed by the government as a military training camp site, and therefore contends that the government has the power to condemn for only temporary use; and for further defense seeks to show that the land is being condemned for the use of the city of Montgomery, Ala., and not for the purpose set forth by the government in its petition.

As indicated above, the determination of the question of necessity for the absolute fee or temporary use is by the Congressional Act of July 2, 1917, c. 35, delegated to the Secretary of War, and his exercise of such authority is final, and is not traversable in this proceeding.

[3] It would also appear to be obvious that where possession of the property has been taken, and condemnation proceedings have been instituted, and expensive improvements erected, it is not for a defendant, or a judge or court, to determine as to whether the property will be used by the Secretary of War permanently, temporarily, or for the purpose for which the condemnation proceedings were brought.

If the use be a public one—and such it is here—whether the necessity exists for the taking, and the extent of the taking, is exclusively within the province of Congress to determine, and Congress has, under this act, vested this authority, not in a court or a jury, but in the Secretary of War. Kaw Valley Drainage Dist. v. Metropolitan Water Co., 186 Fed. 315, 319, 108 C. C. A. 393.

[4] The Secretary of War has exercised the discretionary power

conferred upon him by law, and I do not think that Mr. Forbes can open this question at any stage of the proceeding; and, certainly, he cannot now raise such issues after the judgment of the court ordering the lands condemned under the prayer of the petition, which judgment of the court was not only not objected to at the time, but was acquiesced in by the defendant until after the award was made by the commissioners.

The status of this case, and the rights of the parties, were fixed at the time the petition for condemnation was granted, and the further operation of the law invoked to ascertain the just compensation to be awarded to the owner.

The facts averred in defendant's pleas, if true, could not alter the case one way or the other. The fact, if it be a fact, that the Secretary of War has demobilized the troops at Camp Sheridan is no conclusive argument or reason that he may not or will not revoke that order tomorrow, next week, or even next year, and again mobilize troops there.

The facts averred in the pleas, even if construed most strongly for the pleader, do not necessarily determine that the Secretary of War or the United States no longer have any need for the camp for military purposes.

Certainly the facts alleged are no answer to the facts admitted or known to us all: That a military training camp was there at the time of the filing of the petition in this case; that this land was greatly needed for this purpose; that thousands of young men were trained there to be sent into battle, and many of them sacrificed their lives in obedience to the law and command of the United States. No one knew then when this war would end. Even on this good day we do not know that the war has ended. We hope and believe that it is over, but we are still waiting for the ascertainment and declaration that the war has been concluded. Moreover, no one can possibly know now whether war may not come again from a source other than Germany. The government was forced to spend millions of dollars on this and similar camp sites, for hospitals, warehouses, sewers, roadways, and many other things. Relying upon the assurance given in this statute that the Secretary of War could cause all the interest in the lands to be condemned, many and valuable improvements, as I have said, were placed on these tracts, and like tracts in other places in the United States. To say now that the war has terminated, or is about to be terminated, and therefore the government must abandon its purpose to condemn these lands and dismiss the suit and forfeit all the improvements, would be a stupendous injustice to the government, and one which I do not think this act of Congress intended should be permitted.

[5] The claim is made by the defendant that the Secretary of War has some agreement with the city of Montgomery to turn this property over to the city upon the happening of some contingency. Answering this claim, it is apparent, from what has been said, that the Secretary of War had the legal right to condemn the fee in this land because in his judgment he had determined that the fee was necessary, and Congress in its wisdom had given him the right, and imposed on him the duty, of making this final determination, and he has

performed such duty. The United States government, when these damages are fixed and paid, will own the fee in the land. What final disposition may be made of this land in one year, ten years, or a hundred years from now is no more concern to the defendant than any other citizen of the United States.

[6, 7] Moreover, the court takes judicial notice of the laws of the United States, and knows that no such contract can legally exist. There is no law that confers authority upon the Secretary of War to sell any real estate; and unless such authority is positively conferred by Congress on the Secretary of War he cannot carry out the alleged contract with the city of Montgomery. If the Secretary of War has entered into such a contract it is void, and a void contract can be of no avail to the defendant.

And a plea predicated on such an allegation obviously can be no answer, defense, or valid objection to the petition filed in this case, even if it had been otherwise properly and seasonably made, and presents no reason why this court should not proceed to finally determine what damages should be awarded to defendant for his lands taken.

The government is not seeking to condemn the lands in question for the use of the city of Montgomery.

The act of Congress, supra, under which this proceeding is brought, provides—

"that the Secretary of War is hereby authorized to accept on behalf of the United States donations of land and the interests and rights pertaining thereto required for the above-mentioned purposes." Comp. St. 1918, § 6911a.

And if the city of Montgomery pays whatever amount may be properly allowed to a landowner whose land has been condemned, such owner is not damaged and he has no cause to complain.

[8] And again, after the Secretary of War has exercised the authority vested in him to determine that there is a necessity to condemn the fee, condemnation proceedings have been resorted to, an award made, and an appeal from the award is taken to a jury, it is not within the province of the court to say what shall be done with the land or to what use it shall be put. This is reserved to the Congress, which, of course can act, or authorize the Secretary of War to act.

In this connection it is to be noted that Congress enacted on March 3, 1919, c. 98, 40 Stat. 1302, a law whereby—

"there are hereby permanently transferred to the Treasury Department for the use of the public health service for hospitals or sanatoria or other uses" certain property, including sites and equipments, "and such hospitals, with other necessary buildings, hereafter vacated by the War Department, as may be required and found suitable for the needs of the public health service for hospital or sanatoria purposes." And "the Secretary of War is * * * authorized and directed to transfer without charge to the Secretary of the Treasury" such property "not required by the War Department, as may be required by the public health service * * * the use of such lands or parts of lands, buildings," etc. Sections 2 and 3.

It is for Congress to determine what disposition is to be made of or the use to which the property acquired is to be devoted. It is a question, therefore, not to be determined by the courts.

[9] It was urged on this hearing of the case that the questions of

law which I have passed upon should have been raised by demurrers to the pleas. I am aware that the Supreme Court of the United States, speaking through Mr. Justice Miller, in Bates v. Clark, 95 U. S. 204, 205 (24 L. Ed. 471), has said:

"* * * The principal question in the case is raised by the action of the court below in striking out the plea which set up these defenses as sham and frivolous, and because the locus in quo was not Indian country. This mode of disposing of a plea which fairly raises a most important issue of law seems to be growing in favor in the territorial courts. It is an unscientific and unprofessional mode of raising and deciding a pure issue of law. This should always be done, when it can be, by a demurrer, which is the recognized and appropriate mode in the common law; or by exception, which amounts to the same thing in the civil law, as it is applied to answers in chancery practice. A motion to strike out a plea is properly made when it has been filed irregularly, is not sworn to, if that is required, or wants signature of counsel, or any defect of that character; but if a real and important issue of law is to be made, that issue should be raised by demurrer."

I am also aware that the rule has been laid down in other causes that the motion to strike is proper where the plea is irregular, wanting in every element of legal defense, sham, frivolous, or where the plea is not sworn to, when verification is required, or lacks signature of counsel, and the like. If there were no Alabama statute prescribing the office of a motion to strike a plea, I think that the federal court has the inherent power to so shape the adjective law in this respect in order that the real questions of substantive law which control the case can be fairly and plainly presented and decided. It is the duty of the court to see that this case is reduced to issue of law, and also to issue of fact to be determined by the jury under the law as decided by the court.

[10] And again, it seems to me that the motion to strike presents matters fatal to the plea which cannot be raised by demurrer. For instance, among other things, it does not appear from the face of the pleas in this case that the defendant made no objection to the granting of the order of condemnation on February 6, 1918, or that he appeared before the commissioners and introduced evidence as to the amount of his damage and without having made any objection to the proceedings for condemnation. A demurrer stating these matters would be a speaking demurrer, which courts do not allow. As was said in Jeffries v. Fraternal Bankers' Reserve Society, 135 Iowa, 284, 289, 112 N. W. 786, 787, 14 Ann. Cas. 346:

"A demurrer which sets up a ground dehors the record, or a ground which, to be sustained, requires reference to facts not appearing upon the face of the pleading thus attacked, is said to be a 'speaking demurrer,' and is never held good."

See, also, Pew v. Minor, 216 Pa. 343, 65 Atl. 787; West. Ry. v. Foshee, 183 Ala. 182, 62 South. 500.

[11] If further reason is needed to support the proposition that the question of law were properly raised in this case by the motion to strike, the Alabama Statute, Code Ala. 1907, § 5322, may be cited. This statute provides:

"If any pleading is unnecessarily prolix, irrelevant, or frivolous, or unnecessarily repeated, it may be stricken out at the cost of the party so pleading, on motion of the adverse party. * * *"

259 F.—38

And the Supreme Court of Alabama has held that a plea may be so far without merit as to be classed as frivolous (Carter v. Fisher, 127 Ala. 52, 28 South. 376); and that court has also held, by an unbroken line of decisions, that if a plea does not contain any element of valid defense a motion to strike is proper (Pruett v. Williams, 156 Ala. 346, 47 South. 318; Couch v. Davidson, 109 Ala. 313, 19 South. 507). In Alabama the difference between the office of a motion to strike and the office of a demurrer has been well defined in these cases, and it is this: If the plea contains any matter of defense, however defectively it may be stated, demurrer must be resorted to; but if the plea contains not a single element of defense, then the motion to strike the plea should be employed.

And it is also urged that the act of Congress (act of July 2, 1917) authorizing this and the like condemnation proceedings requires them to "be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted." Comp. St. 1918, § 6911a. And it was further contended that section 914, R. S. (Comp. St. § 1537), known as the Conformity Statute, is applicable here.

It is apparent, of course, from an examination of the Alabama statutes governing condemnation proceedings (Code Ala. 1907, §§ 3860-3887) that the practice governing the Alabama courts cannot be followed in every particular by this court.

[12] The books contain many cases where the United States District and Circuit Courts have not conformed to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held. See Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286; United States v. Fidelity Co., 236 U. S. 512, 35 Sup. Ct. 298, 59 L. Ed. 696; St. Clair v. United States, 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936; In re Chateaugay Iron Co., 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508; McDonald v. Pless, 238 U. S. 264, 35 Sup. Ct. 783, 59 L. Ed. 1300; Beers v. Haufman, 34 U. S. (9 Pet.) 329, 9 L. Ed. 145; Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Parsons v. Bedford, 3 Pet. 433, 7 L. Ed. 732; Kennon v. Gilmer, 131 U. S. 24, 9 Sup. Ct. 696, 33 L. Ed. 110; Bracken v. Union Pacific Ry. Co., 56 Fed. 447, 5 C. C. A. 548; Shepard v. Adams, 168 U. S. 625, 18 Sup. Ct. 214, 42 L. Ed. 602; Lamaster v. Keller, 123 U. S. 389, 8 Sup. Ct. 197, 31 L. Ed. 238.

In the trial of this case in this court the condemnation procedure prescribed by the Alabama statutes cannot be followed in every particular. In the first instance, under section 3860, Code Ala. 1907, the application must be made to the court of probate of the county in which the lands are situated, and if the petition is granted, then, under section 3869, the judge of probate must appoint commissioners, who must assess the damages and compensation. Section 3871. The commissioners are required by section 3874, after hearing all the evidence, to make a report in writing to the court stating the amount of damages and the compensation ascertained and assessed by them. Under the provisions of section 3875, any party may appeal from the order of

condemnation to the circuit court, the superior tribunal, where the matter of damages must be submitted to a jury; and upon the hearing of such appeal, the statute (Code of Alabama 1907, § 3875) provides that the trial "shall be de novo." Other sections of this Alabama law provide for an appeal to the Supreme Court of the state, etc.

In the instant case the petition for condemnation was filed in this court, and the court heard the petition without objection—that is to say, no question of the jurisdiction of the court was made, and no question of the authority of the Secretary of War to cause these proceedings to be instituted was raised; and the court, after a full and fair hearing, the defendant being present by his attorney, granted the prayer of the petition for condemnation, and appointed commissioners to assess the damages, and gave these commissioners appropriate written instructions as to their duties. See United States v. First Nat. Bank (D. C.) 250 Fed. 299, Ann. Cas. 1918E, 36.

After the commissioners appointed to assess the damages and compensation made their report, the defendant Forbes filed his petition for appeal from the award of the commissioners, and the case is now being heard upon such appeal; that is, his appeal is being heard by the same tribunal that granted the petition for condemnation in the first instance. And, of course, on this appeal the defendant is entitled to have the award of the commissioners as to damages reviewed and reheard in this court and passed upon by a jury.

Undoubtedly the right of Forbes to have the question of the amount of his damages for the taking of his property will be determined by the verdict of the jury, and in this respect the court proceeds "in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted" (Act July 2, 1917); and by following the statutes of Alabama in according the hearing, granting the petition for condemnation, appointing the commissioners to assess the damages, and submitting the determination of damages on this appeal to a jury, this court has conformed to the "practice, pleadings, and forms and modes of proceeding" in the Alabama courts "as near as may be," that is, as near as practicable. Hills & Co. v. Hoover, 220 U. S. 329, loc. cit. 335–337, 31 Sup. Ct. 402, 55 L. Ed. 485, Ann. Cas. 1912C, 562; Williamson v. L. & L. G. Ins. Co., 141 Fed. 54–58, 72 C. C. A. 542, 5 Ann. Cas. 402; Elson v. Town of Waterford (C. C.) 135 Fed. 247. In my opinion, the only right now left to the defendant is his right to have the measure of his damages fixed by a jury.

As was held in the case of Beers v. Haughton, 9 Pet. 329, 359 (9 L. Ed. 145):

"State laws cannot control the exercise of the national government, nor in any manner limit or affect the operation of the process or proceedings in the national courts. The whole efficacy of such laws in the courts of the United States depends upon the enactments of Congress. So far as they are adopted by Congress, they are obligatory; beyond this, they have no controlling influence."

It is not inappropriate to observe, "it has been said that proceedings of this class"—before commissioners for the condemnation of

land—"are special and bear little resemblance to an ordinary legal trial. The law contemplates simplicity as far as possible in regard to the practice." 15 Cyc. 888.

I think the defendant's attorneys would have the court give too broad a meaning to the words, "on such appeal (to the circuit court and to a jury) the trial shall be de novo." Section 3875, Code Ala. 1907. There are similar statutes of other states, where it is provided that the case on appeal shall be tried 'anew,' or a 'new trial had,' or the trial 'shall be de novo.' And some of the courts in defining these terms have given necessary limitations to these terms, or restricted the scope of their meaning, in order that the statute may be workable and brought into harmony with common sense and the doing of justice in the particular case.

In the case of Ex parte Morales, 53 S. W. 107, 108, where the defendant sought to file new pleas, the Court of Appeals of Texas, construing the Texas statute providing for a "trial de novo in the county court" where the case was appealed from the justice of peace, said:

"These articles certainly require that the trial shall be de novo upon the original papers. The term 'de novo' means 'anew'; a second time. * * * In civil cases this term has been construed to mean that a trial de novo, where an appeal is taken from a judgment of a justice court to the county court, is a trial upon the original papers, and upon the same issues had in the court below."

See Ostrom v. Tarver (Tex. Civ. App.) 29 S. W. 69.

It does not seem that the defendant Forbes can here, on appeal from the award of the commissioners and for the first time, file pleas denying the right to condemn, or the necessity to condemn, when the matter has already been decided by the court at a former hearing of the cause, when he was present by his attorneys, and when and where he made no objection to the granting of the petition for condemnation. To allow him to do this would be to approve his speculation upon the award of the commissioners.

Upon consideration of the motion of the government to strike the pleas numbered from 1 to 12, both inclusive, and lettered from A to I, both inclusive, filed by the defendant, it is ordered, adjudged, and decreed by the court that the motion to strike the pleas be, and is hereby, granted.