## CITY OF OAKLAND v. UNITED STATES.
### No. 9801.

Circuit Court of Appeals, Ninth Circuit.
Jan. 14, 1942.

Rehearing Denied Feb. 18, 1942.

Charles A. Beardsley, Port Atty., and W. Reginald Jones, Asst. Port Atty., both of Oakland, Cal., for appellant.

Norman M. Littell, Asst. Atty. Gen., M. Mitchell Bourquin, Sp. Asst. to Atty. Gen., of San Francisco, Cal., and Charles R. Denny, Jr., and John F. Cotter, Attys., Department of Justice, both of Washington, D. C., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment entered by the District Court of the United States for the Northern District of California, Southern Division, in the above-entitled action on January 15, 1941, and from the order of the same court entered on March 6, 1941, denying appellant's motion to vacate the judgment. The appeal is both from the judgment and from the order, each appeal serving the same purpose.

A proceeding by the United States to acquire by condemnation seventy-two acres of land on the Oakland waterfront for the military purposes of the United States, as these are described in "An act to authorize

condemnation proceedings of lands for military purposes", 40 Stat. 241, as amended, 50 U.S.C.A. § 171, and referred to in the Act of September 8, 1940, Public No. 781, 76 Cong., 3d sess., appropriating money therefor, was instituted by filing a complaint in condemnation against appellant and others on January 15, 1941. The complaint alleged that the Secretary of War, acting under the authority of the acts of Congress had selected for acquisition by the United States of America the land described and had determined the same to be suitable and necessary for military purposes of the United States. It further alleged that the land was necessary for such purposes and that the use thereof was immediately required in order that necessary work could be begun at the earliest practicable date for the location, construction, and prosecution of works described in the acts of Congress referred to; that the purposes for which said land and appurtenances were being taken are necessary, suitable, and constitute a public use, and the use to which said property was to be applied was a use authorized by law.

Simultaneously with the filing of the complaint there was filed in the name of the United States by the Secretary of War a declaration of taking conforming to the requirements of 40 U.S.C.A. § 258a, and there was deposited in the registry of the court the sum of $2,168,000, being the estimated amount of just compensation for the property. Upon the filing of the declaration of taking and the making of the deposit the court entered a judgment, finding that the requirements of said statute had been complied with, and decreeing that in accordance with the terms and provisions of the statute, title had vested in the United States; that the lands were deemed to have been condemned and taken for the use of the United States, and that the right to just compensation had vested in the persons entitled thereto, to "be ascertained and awarded in this proceeding and established by judgment herein pursuant to law".

The Declaration of Taking Act, approved February 26, 1931, c. 307, 46 Stat. 1421, 40 U.S.C.A. §§ 258a–258e, is printed in the margin.[1]

---

[1] § 258a. "In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

"(1) A statement of the authority under which and the public use for which said lands are taken.

"(2) A description of the lands taken sufficient for the identification thereof.

"(3) A statement of the estate or interest in said lands taken for said public use.

"(4) A plan showing the lands taken.

"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

"Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.

"Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.

"Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall

Summons was served upon this appellant January 16, 1941. On February 14, 1941, appellant filed a motion to vacate the judgment, which was denied on March 6, 1941. On April 4, 1941, appellant gave notice of appeal from the judgment and from the order denying the motion to vacate said judgment.

Specifications of error relied upon are thus stated by appellant:

"Since the questions involved on the appeal from the judgment, and on the appeal from the order denying the motion to vacate the judgment, are the same or substantially the same, and since both appeals serve the same purpose, the specifications of the errors upon which the appellant relies, whether addressed to the judgment or addressed to the order, will be numbered consecutively herein. Specifications numbered (1) to (5) are addressed to the judgment; specification numbered (6) is addressed to the order; as follows:

"(1) The court erred in entering a judgment of condemnation, without either process, or appearance by the appellant, or a hearing, or an opportunity to be heard upon the issues adjudicated in said judgment;

"(2) The court erred in entering a judgment of condemnation on the declaration of taking, in the absence of any statutory authorization for any judgment thereon;

"(3) The court erred in entering a judgment of condemnation upon the commencement of the proceeding, contrary to the Acts of Congress requiring conformity to the practice in such proceedings in the California courts;

"(4) The court erred in entering a judgment of condemnation upon the declaration of taking, because it does not specify the public use for which the Secretary of War seeks to condemn the appellant's property;

"(5) The court erred in entering a judgment of condemnation on the declaration of taking, because the Act of Congress providing for such a declaration of taking in such a proceeding is unconstitutional in that it provides for a deprivation of property without due process of law, contrary to the provisions of the Fifth Amendment to the Constitution of the United States, and because the ex parte judgment itself is likewise violative of the due process requirement of said Amendment;

"(6) The court erred in denying the appellant's motion to vacate the judgment, to the end that the appellant might be given an opportunity to be heard at the trial upon any and all issues that may properly be raised in the proceeding."

## Appellant's Right To Be Heard.

■ Appellant's principal grievance, most strongly voiced, is to the effect that the action taken by the District Court deprives it of property without giving it any opportunity to be heard. The judgment or-

---

be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

§ 258b. "No appeal in any cause under section 258 of this title nor any bond or undertaking given therein shall operate to prevent or delay the vesting of title to such lands in the United States."

§ 258c. "Action under section 258a of this title irrevocably committing the United States to the payment of the ultimate award shall not be taken unless the chief of the executive department or agency or bureau of the Government empowered to acquire the land shall be of the opinion that the ultimate award probably will be within any limits prescribed by Congress on the price to be paid."

§ 258d. "The right to take possession and title in advance of final judgment in condemnation proceedings as provided by section 258a of this title shall be in addition to any right, power, or author-

ity conferred by the laws of the United States or those of any State or Territory under which such proceedings may be conducted, and shall not be construed as abrogating, limiting, or modifying any such right, power, or authority."

§ 258e. "In any case in which the United States has taken or may take possession of any real property during the course of condemnation proceedings and in advance of final judgment therein and the United States has become irrevocably committed to pay the amount ultimately to be awarded as compensation, it shall be lawful to expend moneys duly appropriated for that purpose in demolishing existing structures on said land and in erecting public buildings or public works thereon, notwithstanding the provisions of section 255 of this title: Provided, That in the opinion of the Attorney General, the title has been vested in the United States or all persons having an interest therein have been made parties to such proceeding and will be bound by the final judgment therein."

der complained about, by its very terms contradicts such claim. After determining that the ex parte showing made by the Government is sufficient to warrant the determination that the premises in question are necessary for the military uses of the United States, that they have been condemned and taken, and that the United States is entitled to immediate possession, it further provides that the actual taking of possession be suspended until after thirty days' notice of the judgment has been given to the defendant. The judgment then recites that "this cause is held open for such other and further orders, judgments and decrees as may be necessary in the premises".

As the learned District Court in its opinion on the motion to vacate the judgment order points out, there will be ample opportunity, if relief is prayed for on any such grounds, for appellant to be heard on the question that the Secretary of War was acting without authority or that there was no necessity for the Government to acquire the land or any other reason that would make the action of the officials wrongful or fraudulent. The answer of the District Court to these suggestions merits quotation: "Assuming for purposes of argument that it is ultimately determined that the declaration of taking is affected with fraud or bad faith, it would follow that the declaration of taking will be a nullity, ineffective to vest title, and that the judgment thereon would also be a nullity. There has therefore been no prejudice to the substantial rights of the defendant by the entry of the judgment here under attack. The occasion and the authority for such judgment at this juncture is manifest. * * *."

But appellant does challenge the power of the court to enter the judgment complained of, and insists that there is no authority therefor to be found in the law. The statute, however, declares that upon the performance of certain requirements the condemnation shall be effective. The judgment of the court here merely recites that it has found that these requirements have been met. The statute also provides that if the final award made exceeds the amount paid into court, interest shall be allowed on the amount of the excess from the date of the taking, and, further, the court is required to fix the time and the terms upon which defendant shall surrender possession, which all implies that the court must first express its judgment that the requirements of the statute have been complied with. This is in accordance with orderly procedure. To advise the appellant of the action that has been taken certainly does not adversely affect the enforcement of its rights.

The entry of an order by a District Court, without the benefit of express statutory authority, permitting the United States to take immediate possession to land sought to be condemned was upheld in Commercial Station Post Office v. United States, 8 Cir., 48 F. 183, and followed in Hessel v. A. Smith & Co., D.C., 15 F.Supp. 953, and United States v. Eighty Acres of Land, D.C., 26 F.Supp. 315.

### Eminent Domain and Due Process.

■ Appellant contends the taking of its property under this act is an attempt to deprive it of property without due process of law, contrary to the Fifth Amendment to the Constitution. The title of the act declares its purpose to be "To expedite the construction of public buildings and works * * * by enabling possession and title of sites to be taken in advance of final judgment in proceedings * * * under the power of eminent domain." 46 Stat. 1421. The power of eminent domain is not dependent upon any specific grant in the Constitution; it is inherent in sovereignty, limited and conditioned by the just-compensation clause of the Fifth Amendment. Hanson Lumber Co. v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809.

■ The act provides that in any condemnation proceedings brought by the United States, upon filing the petition and before judgment but after filing a declaration of taking and the deposit in court of the amount of estimated compensation, the land in question shall be deemed to be condemned and taken for the use of the United States and title shall vest in the Government. The statute authorizes the taking of possession where certain requirements have been met, particularly where adequate provision has been made for just compensation for the parties entitled thereto. In the case here such provision for compensation was made, and the requirements of the Fifth Amendment were not violated. United States v. Meyer, 7 Cir., 113 F.2d 387, 392. With the petition there was presented to the court the declaration of taking, and the appraised value of the property, in the sum of $2,168,000, was deposited in the registry of the court for appellant and the others entitled to share therein. Thereupon the court found that the preliminaries required by the act had been complied with. The court

fixed the time, after notice, upon which appellant should surrender possession to the petitioner.

■ Following the provisions of the statute, the court also decreed that the right to just compensation for the property taken vested in the persons entitled thereto, the amount of such compensation to be ascertained and awarded in the proceedings pursuant to law. The law further provides that if just compensation as finally ascertained exceeds the deposit, the court is required to enter judgment against the United States for the amount of deficiency together with interest at the rate of six percent from the date of taking to the date of payment. The Fifth Amendment does not entitle the owner to be paid in advance of the taking where the statute provides for ascertaining just compensation, and the Government has impliedly promised to pay that compensation. Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554; Crozier v. Fried Krupp, etc., 224 U.S. 290, 306, 32 S.Ct. 488, 56 L.Ed. 771; Bragg v. Weaver, 251 U.S. 57, 62, 40 S.Ct. 62, 64 L.Ed. 135; Joslin Mfg. Co. v. Providence, 262, U.S. 668, 677, 43 S.Ct. 684, 67 L.Ed. 1167.

■ Where the federal Government under the Constitution has power to undertake the purposes for which the land is sought to be acquired, then the use is a public one. A military purpose is such a public use. United States v. Forbes, D.C., 259 F. 585. The Congress has authorized the Secretary of War to determine the necessity for acquiring such property and the extent of the taking. Bragg v. Weaver, supra; Barnidge v. United States, 8 Cir., 101 F.2d 295; Hanson Lumber Co. v. United States, supra, 261 U.S. at page 585, 43 S.Ct. 442, 67 L.Ed. 809; United States v. Gettysburg Elec. Ry., 160 U.S. 668, 685, 16 S.Ct. 427, 40 L.Ed. 576.

■ The purpose of laws such as the one under discussion is to permit the Government in its sovereign capacity to proceed with necessary public works without being hampered by delays which might occasion great and irreparable injury. When the greatest combination of autocratic powers of all time is ruthlessly engaged in an attempt to strangle the liberty of the world, to delay action in achieving military objectives may well be fatal. Here, in an emergency of war, the Government through its Secretary of War, acting under statutes passed for the purpose, has found and declared that the property taken is necessary for military purposes; and provision has been made to recompense the owners fully for the taking. Appellant, however, insists that it should have the right to halt the progress of the work until it can be heard in the various courts to prevent the Government from taking this necessary action. The sovereign state should not be reduced to such impotency. Where the Secretary of War has proceeded as prescribed by the Act of Congress, the court will not go behind his declaration to inquire into his intentions. Old Dominion Land Co. v. United States, 269 U.S. 55, 66, 46 S.Ct. 39, 70 L.Ed. 162; United States v. Forbes, supra, 259 F. at pages 591, 592.

■ It is also urged that the congressional mandates expressed in the Conformity Statutes, 28 U.S.C.A. § 724, 40 U.S.C.A. § 258, 50 U.S.C.A. § 171, have been violated by the proceedings herein. This position is not tenable. The complaint conforms to the requirements of the Code of Civil Procedure of California, Section 1244, which is sufficient. Central Pac. Ry. v. Feldman, 152 Cal. 303, 92 P. 849. The California decisions are also in harmony with those from the federal courts in holding that due process required no more than that the owner be given an opportunity to be heard at some stage of the proceedings upon reasonable notice of the pending suit. Marblehead Land Co. v. Superior Court, 62 Cal.App. 408, 412, 217 P. 536. Peck v. Superior Court, 138 Cal.App. 222, 31 P.2d 1042. Moreover, the requirement of the statute that the proceedings provided for are to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherever the proceedings may be instituted is not to be so construed as to defeat the purpose of the act. Forbes v. United States, 5 Cir., 268 F. 273, 276; Luxton v. North River Bridge Co., 147 U.S. 337, 13 S.Ct. 356, 37 L.Ed. 194.

■ The particular manner in which the land is to be used for the purpose of its taking is sufficiently pleaded when set forth in the terms of the statute under which the proceeding is taken. Northern Light, etc., Co. v. Stacher, 13 Cal.App. 404, 109 P. 896. The proceedings here substantially conform to the California law upon the same subject except so far as controlled by the act of Congress under which the proceedings were instituted or by other laws of the United States. Chappell v. United States, 160 U.S. 499, 513, 16 S.Ct. 397, 40 L.Ed. 510.

**Affirmed.**