## Charles T. Gorham v. Nelson H. Wing and others.

Trust estates are not liable to levy and sale on execution.

Under the Revised Statutes of 1838 a sale of lands on execution did not divest the title of the judgment debtor until consummated by a deed.

Where a complainant in Chancery has stated his case defectively, and no demurrer has been interposed, but defendant has only claimed the benefit of a demurrer by his answer, and the case is brought to a hearing on pleadings and proofs, it may be proper to allow the defect in the bill to be corrected at the hearing if the proofs show complainant entitled to relief.

The time for redemption on sales under said Revised Statutes was to be computed exclusive of the day on which the sale was made.

A deed to consummate an execution sale, executed before the time of redemption has expired, is void.

The act of Congress of May 19th, 1828, adopting for the final process of the United States Courts the laws of the several States on the subject, having by the act of August 1, 1842, been made applicable to the States afterwards admitted, is to have the same effect in the new States as if originally adopted at the last mentioned date. It is therefore to be construed as adopting such laws of Michigan on the subject as were in force August 1, 1842.

On sales made by the United States Marshal in Michigan on demands accruing in 1842, for moneys collected by a public officer, or for misconduct or neglect in office, two years redemption was allowed.

Where suit was brought against a public officer, for balances reported against him at three several times, it was held that the action must be deemed to have accrued against him at the date of the last balance.

*Heard May 27th, 28th and 29th. Decided October 21st.*

GORHAM *v.* WING.

Appeal in Chancery from Washtenaw Circuit.

*A. Felch* for complainant.

*G. V. N. Lothrop* for defendant.

CHRISTIANCY J.:

The first question is, whether the bill makes a case which entitles the complainant to relief?

Complainant claims to derive title to the lands in question through a sale on an execution issued by the Circuit Court of the United States for the District of Michigan, on a judgment recovered in favor of the United States on the 4th of January 1847, in an action of assumpsit for moneys received by Lee as Receiver of the United States Land Office at Green Bay, between October 1837 and the first day of April 1842. The sale was made by the Marshal, December 22d 1847, to the United States. The bill merely sets forth the sale made by the Marshal, the receipt on the execution by the U. S. District Attorney of the $1,500 purchase money bid by the United States for the property, and the giving of a certificate of sale by the Marshal (which on reference appears to be dated December 22 1847, and states that the sale will become absolute at the expiration of one year, unless previously redeemed "in the manner prescribed by the statutes of Michigan and the rules of this Court"). The bill does not allege the execution of any deed by the Marshal in pursuance of the sale, nor in any manner refer to the existence of such deed: but, in the derivation of complainant's title, after stating the certificate of sale, proceeds to state a sale and conveyance of the property by the United States to one Timothy Stillman, and then deduces the title through several intermediate conveyances, down to complainant. It also, in a subsequent portion of the bill, avers that the land had not been redeemed from the sale.

GORHAM *v.* WING.

By way of showing the pretended title under which defendant Arnold claims, the bill states the execution of three several official bonds by said Lee as Receiver, and by certain sureties therein mentioned, the "first dated July 29th, 1837, the second December 9th, 1837, and the third November 15th, 1838. None of the parties to this suit executed the first bond, but defendant Wing was one of the sureties in the second, and defendants Wing and McCauley, and one Joseph Arnold (father of defendant Arnold) were, among others, sureties in the third. The bill avers three several settlements or statements of account between the United States and Lee, as Receiver. That on the one of December 9th, 1837 there was found due to the United States from said Receiver $1,311.92, on that of November 15th 1838, $5,028.14, and on that of April 1st 1842 $1,500.31. That on the eleventh day of June 1842 the defendants, Wing and McCauley, pretending to said Lee that they were liable to the United States for large sums of money on account of said bonds, and in consequence of the supposed defalcation of said Lee, &c,, and pretending that they were anxious that the property of said Lee (being the land in question) should be held in trust by them for the sole and only purpose that the same could be turned out by them to satisfy any deficiency there might be in the accounts of said Lee with the United States, induced Lee to execute and deliver to said Wing and McCauley a deed of conveyance of the said land, with warranty, which deed was absolute in form, and was duly acknowledged and recorded, as a deed of conveyance; but that at the time of the execution and delivery of this deed, Wing and McCauley executed under their hands and seals, and delivered to said Lee, their bond or writing obligatory, which is set out *in haec verba*, and which, after reciting the fact of the conveyance to Wing and McCauley, is conditioned as follows:

GORHAM v. WING.

"If Thomas Lee bears Nelson H. Wing and William McCauley harmless for certain bond or bonds said Wing and McCauley have signed as surety for said Lee, to the United States, as Receiver of Public Moneys of the Land Office at Green Bay, then said Wing and McCauley agree to re-deed to said Lee the above described land. It is understood that if the United States can hold legally said Wing and McCauley, as said Lee's surety, that said Wing and McCauley have a right to turn this property out to satisfy the demand at any time they see fit, and they the said Wing and McCauley, are to have the above land until they are discharged by the United States from any liability in consequence of having signed as surety for said Lee. It is thought said Wing and McCauley are now clear, but said Wing and McCauley take this deed of said land to bear them harmless, lest they might have to bear the expense, one or both of them, of a law-suit with the United States."

This bond, declaration of trust, or defeasance, does not appear to have been acknowledged or recorded.

The bill then states that, on the 29th day of December 1844, a suit was brought by the United States, against defendant Wing, as surety on the second bond, and that on the first day of July 1844, on a trial in the Circuit Court of the United States for the District of Michigan, it was made to appear that said Thomas Lee was not indebted to the United States, but that the sum claimed in that suit had been paid and satisfied; and that thereupon said Wing had judgment. That on the 26th September 1843 another suit was brought by the United States in said Court against said Wing, upon the third bond; that on the 22d July 1844 a judgment was recovered by stipulation against said Wing for $50,000, to be discharged on payment of $1,500.31 and interest at six per cent from April 13th 1842. That on the 30th September 1843 suit was commenced by the United States

10 MICH.—F2.

against McCauley on said third bond, and that on the 17th June 1844 judgment was recovered against him by default for $50,000, to be discharged on payment of $1,696.41. That complainant is informed and believes that judgments were also recovered against many or all the other persons named as sureties in said bonds. That on the 10th of April 1852 Lee caused said judgments against Wing and McCauley, as well as those against all the other sureties to be discharged of record.

The bill then states that said Wing & McCauley, on the 28th day of June 1850, severally pretending to have "some right title and interest in fee simple" in said land, executed and delivered their several deeds of conveyance of the same to defendant Arnold, which were duly acknowledged and recorded—charges, upon information and belief, that said Arnold at the time was informed and well knew, that Wing & McCauley had not then, and never had, any right, title or interest in said premises, or any right to sell or convey the same; that he well knew that they had only the right to turn out said premises to satisfy any claim the United States might have against Lee and his sureties, by reason of his defalcation as Receiver, &c.; that he had notice of the levy and sale to the United States, and that the United States and their grantees were the *legal and equitable* owners thereof: and that the said Wing & McCauley held the said lands in trust only for the United States, subject to any indebtedness the United States might at any time have against said Lee and his sureties, on account of any deficiency in the accounts of said Lee, as Receiver: and that "said Arnold well knew that all the right, *title* and interest of said Wing and McCauley in and to said premises were extinguished by the levy and sale of said premises on said judgment and execution" (against Lee). That Wing & McCauley sometimes pretend that they have been compelled to pay sundry sums of money in the employment

of counsel and in defending said suits, &c.; but charges that Lee employed all necessary counsel, that there was no appearance on the part of McCauley: that in the suit against Wing judgment was rendered against him on stipulation, and that Lee employed counsel and defended said causes, and was at all necessary expense. That Lee remained in possession till September 1850, and then surrendered the land to Williams, one of the complainant's grantors, and took a lease from him till the first of April 1851; that said lease was assigned by Williams to Thayer (through whom complainant derives title) when Williams conveyed to Thayer, September 20th 1850. That after this lease, in the fall of 1850, defendant Arnold went into possession by force, and compelled Lee to remove from the same: and that neither Wing & McCauley nor Arnold ever had possession in any other way. That complainant believes there is danger that Arnold, Wing & McCauley will sell, dispose of, and convey, or otherwise encumber said premises, unless restrained by injunction. That complainant has applied to Wing, McCauley and Arnold, and requested them to convey to him, &c., so that the cloud upon his title might be removed.

The bill calls for an answer without oath.

The prayer for relief is that said Wing and McCauley and Arnold may be decreed to deed and convey said premises to complainant, or that the deed from Lee to Wing and McCauley, and that from Wing and McCauley to Arnold, may be set aside and held for nought; and for other relief, &c.; and prays an injunction.

It is clear from this statement of the bill that it proceeds upon the theory that the United States had obtained, by the sale on the execution, all the right and title which Lee held in the land at the time of the levy and sale, whether that right was the legal estate or a mere equity, and that complainant holds that right, claimed by the bill to be the legal title, through a purchase of the same from the United States.

If the case made by the bill fails to show that the title of Lee was divested and transferred to the United States by the sale on the execution, then, as no other title is claimed, it is quite clear the complainant is entitled to no relief under this bill in its present shape, whatever may have been the nature of Lee's rights in the land, or of the interest held by Wing and McCauley under Lee's deed.

One of the principal questions discussed upon the argument was, whether this deed from Lee to Wing and McCauley, taken in connection with the bond, or instrument of trust, or defeasance, constituted a conveyance of the title. in trust, or merely a mortgage of indemnity : defendant's counsel insisting upon the former and the complainant's counsel upon the latter view. Though strongly inclined to consider it more in the nature of a trust than that of a mortgage, we do not think the question neces sary to the decision of the present case, and shall not therefore assume to decide it.

If a .trust, the interest of Lee was not liable to levy and sale on execution against him, and no title or interest whatever passed by the sale, or could have passed by the execution of a deed by the Marshal. *Trask v. Green,* 9 *Mich.* 358 ; *Lessee of Smith v. McCann,* 24 *How.* 398.

The bill treats the conveyance of Lee to Wing and McCauley as a conveyance in trust, and the ' relief prayed by the bill is in accordance with this view. But the bill, nevertheless, seems to go upon the theory, and expressly claims, that complainant had obtained the legal title through the execution sale — a claim not easily reconciled with the idea of the legal title being in Wing and McCauley in trust, at the time of the levy and sale.

But if the deed is to be treated as a mortgage, leaving the title of the property, subject to the mortgage, or what is usually denominated the equity of redemption, still in Lee, liable to sale on execution, we think the bill

fails to show the mortgagor's title divested and transferred
to the United States by the execution sale. Whether the
statute which we suppose to be applicable to the case
(R. S. of 1838, Part 2, Title 5 Ch. 3, §§ 1, 20, 21 and 22),
was intended to authorize the sale of the mortgagor's interest
in any case except when the instrument would be recognized
as a mortgage at law, and without the necessity of a suit to
determine its character, we think admits of much doubt.
But whether thus confined, or extended·to every instrument
which, though absolute on its face, might for any cause be
treated as a mortgage in a court of equity ; in either view
of the statute the proceedings for divesting the mortgagor's
title · by execution sale are the same as on the sale of the
fee not subject to mortgage: and the interest of the mort-
gagor, whatever it may be, does not, we think, pass by sale
on execution and a certificate of that sale, but the officer's
deed is necessary to pass that interest to the purchaser. The
statute (which as will be hereafter shown, was adopted by
the act of Congress) provides the mode of transferring the
title on execution sale. It is not the purpose of the certifi-
cate given on the sale, either before or after the time of
redemption has expired, to pass the title of the property
sold. A certificate was necessary as written evidence to
satisfy the Statute of Frauds (*Jackson v. Catlin,* 2 *Johns.*
248), as well as to preserve the evidence which was to en-
title the purchaser to a deed when the time of redemption
should have expired.

It does not purport to convey the property sold. It is
merely required to contain, " first, a description of the prem-
ises sold: second, the price bid for each distinct lot or par-
cel: third, the whole consideration money paid ; fourth, the
time when such sale will become absolute, and the purchaser
or purchasers will be entitled to a deed as hereinafter pro-
vided." (*Section* 10 *of the chapter above cited*). This cer-
tificate is to be presumptive evidence of the facts therein
contained. If not redeemed within the time allowed by the

statute, "the officer making such sale, or his successor, shall *complete the same* by executing a deed thereof, in due form of law, to the purchaser; *and such deed shall be valid and effectual to convey all the right, title and interest* which was sold by such officer." (*Sec.* 12 *of same Chapter*).

Until the execution of the deed, the sale must be looked upon as incomplete and inchoate only, whether the time of redemption has expired or not. Causes might perhaps exist which would render the execution of a deed improper, and possibly the sale might, for good cause, be set aside on motion. If the officer should neglect or refuse without good cause to execute the deed at the proper time, the purchaser has a clear remedy by a proper application to the Court to compel its execution; and doubtless the United States, as a purchaser, had the same remedy as any other purchaser. And in case of the death or removal from office of the Marshal who made the sale, or the expiration of his commission before the execution of the deed, the act of Congress of May 7, 1800, §3 (2 *Stat. at Large*, 61) provides that the purchaser may apply to the Court from which the process issued, and set forth the case, assigning the reason why the title was not' perfected by the Marshal who sold the same; and thereupon the Court may order the Marshal for the time being to perfect the title and execute a deed to the purchaser." But until the United States had acquired the interest of Lee (whatever that was), by the execution of a deed, they could not convey that interest. It is possible that the sale and deed to Stillman might be construed as an assignment of the certificate of sale, but if so it did not convey the interest in the land, but only the right to call for a conveyance from the officer, and perhaps to compel such conveyance in a proper proceeding against him. It is unnecessary to consider the point, whether the deed might not be dispensed with in a case like the present, if its execution had become impossible or could not be

enforced; as no such case is presented by the bill, and no reason or excuse shown why it was not obtained. The subject of the deed is in no way alluded to. But the complainant would seem, by his bill, to have purposely left his case to stand upon the certificate, without the aid of a deed. The deed therefore is not in issue, and if one was properly executed, it would not be admissible in evidence without an amendment of the bill, as it would not tend to establish the case made by the bill. *Warner v. Whittaker*, 6 *Mich.* 136; *Bloomer v. Henderson*, 8 *Mich.* 402; *Barrows v. Baughman*, 9 *Mich.* 220; *Story Eq. Pl.* § 257. Doubtless an allegation of title, if not demurred to, may sometimes be so general as to admit in evidence anything which tends to establish a title; because anything which would have such tendency would be included within the scope of the allegation. But here the title is not stated by way of a general allegation, and could not well be; but the derivation of the title is specially set forth, and made to rest upon the certificate, without any allusion to a deed.

But as the bill was not demurred to, and the benefit of a demurrer only claimed generally by the answer, and the parties have gone to a hearing upon pleadings and proofs, it might have been proper, had a valid deed from the Marshal been proved, still to allow an amendment of the bill in this respect: and with this view it will be proper thus far to examine the proofs.

An instrument purporting to be a deed from the Marshal seems to have been proved, and is returned with the exhibits—several objections being taken to the exhibits which it is not necessary here to notice. But we do not think this instrument can be recognized as a valid deed under the execution sale: for the reason that it was executed before the time of redemption had expired, and consequently, when the Marshal had no power to execute any deed upon this sale: and if not valid when executed, it could not become so by the debtor's subsequent failure to

redeem. *Quod initio non valet tractu temporis non convalescit.*

First; if the time of redemption, by the statute applicable to the case, was but one year, as seems to have been supposed by the Marshal in executing the certificate and deed, still we think the deed was executed one day too soon. The sale was made December 22, 1847, and the deed is dated and acknowledged December 22, 1848. The only statutes which we suppose can be claimed to apply to the case are, the Revised Statutes of 1838, Chap. 3, Title 5, Part 2 (either with or without the amendment of 1839 hereafter noticed), or the Revised Statutes of 1846, Chap. 79 Title 18. If the amendment of 1839 be excluded, then under both revisions, the period of redemption was "within one year from the time when such sale shall have been made." When time is to be computed *from* the time of an act done, we think the more reasonable rule is that the day on which the act is done is to be excluded from the computation. *Ex parte Dean*, 2 *Cow.* 605; *Homan v. Liswell*, 6 *Cow.* 659; *Snyder v. Warren*, 2 *Cow.* 518 (*a case of redemption under the statute*); *Commercial Bk. &c. v. Ives*, 2 *Hill*, 356 *and note*; 3 *Chitty's Gen'l Pr.* 109; *Pitt v. Shew*, 4 *B. & Ald.* 206. This rule would have given the whole of the twenty-second day of December 1848 for redemption, and, until that day had expired, the power of the Marshal to execute the deed did not exist.

But we think the period of redemption applicable to this sale was two years.

We are aware of no act of Congress which directly regulates the proceedings on execution, or the time of redemption in such cases, but the whole subject is provided for by acts of Congress adopting the state laws upon the subject, and rules of court made under the authority of those acts.

The third section of the act of Congress of May 19, 1828 (4 *Stat. at Large* 278) adopted upon this subject the

then existing laws of the several states, with the proviso, however, "that it shall be in the power of the courts, if they see fit, in their discretion, by rules of court, so far to alter final process in said courts as to conform the same to any change which may be adopted by the legislatures of the respective states for the state courts." That this act applies to the redemption of land sold on execution, as part of the proceedings, we think can admit of little doubt. See *U. S. v. Knight,* 14 *Pet.* 301; *Amis v. Smith,* 16 *Pet.* 303; *Hopkins' case,* 2 *Curtis' C. C. R.* 567.

.By the act of Congress of Aug. 1, 1842 (5 *Stat. at Large,* 499), "the provisions of" the above act"of May 19, 1828 "shall be, and they are hereby made applicable to. such states as have been admitted into the Union since the date of said act."

As to all the states admitted into the Union between the date of the act of 1828 and that of 1842, the effect of the latter act must, we think, be the same as if the act of 1828 had been re-enacted in *haec verba*: and, consequently, as Michigan was one of these states, the act must be construed as an adoption, by Congress, of the laws of this state applicable to this subject, as they existed on the first day of August 1842, so far as the same were valid. *Beers v. Haughton,* 9 *Pet.* 329. Whether the Federal Courts would have any power, by rule, to alter the effect of the state laws then in force, and thus adopted, otherwise than to conform their process to any subsequent change in the state legislation, it is not necessary here to decide, as this case does not raise the question.

By Rule 99 of the Circuit Court of the United States for this District, adopted July 5, 1847, Title 18, Ch. 79, and Title 22, Ch. 106, of the Revised Statutes of 1846 were adopted, as to executions in *cases* where the *cause of action accrued subsequent* to the revision. This rule cannot therefore apply to the present case, as the cause of action accrued prior to that time. But the rule further

provides that executions on causes of action accruing prior to the Revised Statutes of 1846, shall be according to the law existing when the cause of action accrued. Whether this was really what was intended by the rule, or whether it was intended merely to conform to the decisions of the Supreme Court in *Bronson v. Kinsie,* 1 *How.* 316, and *McCracken v. Hayward,* 2 *How.* 608 (which we do not understand to adopt so broad a principle), may be doubted: and we are not entirely satisfied that under the power to make rules, given by the act of 1828, the Courts have any power, in adopting State laws, to make a distinction based *merely* upon the time when the cause of action accrued. But it is unnecessary to decide this question, since, admitting the rule of 1847 to be valid, it in no way changes the result in the present case from what it would have been if the case were left to stand upon the act of Congress of 1842, and the State laws thereby adopted.

The action against Lee was assumpsit to recover the balances found due on the several accounts stated, one of December 9, 1837, one of November 15, 1838, and the last April 1, 1842. As it would be difficult in respect to the execution, to treat the different portions of the cause of action as having accrued at three several times, so as to apply one law to the one portion and another to another, the whole we think, must be treated as having accrued, within the meaning of this rule, at the time of the last account stated, April 1, 1842: and the laws of the State on this subject were the same on that day as when adopted by the act of Congress, August 1, 1842. The State laws, then, applicable to the case in August, 1842, must govern it.

As to executions in ordinary cases, the act of February 17, 1842, *Laws of* 1842, *p.* 135, so far as it had any validity under the Constitution, was then in force. But, whether valid or not in any case, it did not apply to the execution against Lee, as Receiver of public moneys; as the sixth

GORHAM v. WING.

section excludes the case from its operation, by expressly providing, that "this act shall not be construed as extending to any proceedings as for contempt to enforce civil remedies, nor to any action for fines and penalties, or on promises to marry, *or for moneys collected by any public officer, or for any misconduct or neglect in office,* or in any professional employment." The act of March 27, 1841, *Laws of* 1841, *p.* 47, repealed by this act, contained a similar provision, (§ 6). All the cases, therefore, thus excepted from these acts, were left to stand upon previously existing laws, which, as to these cases, were in no way affected by these acts.

What, then, was the prior law applicable to these cases as it existed in April (and in August), 1842, when the cause of action arose?

The only law applicable to the time of redemption of lands sold on execution, in such cases, was Chap. 3, Title 5, Part 2, R. S. of 1838, as amended by act of April 20, 1839, *Laws of* 1839, *p.* 220. Sections 13, 16 and 17 of the original chapter fixed the period at " one year." The amendment of 1839 struck out "one" and inserted "two," thus making the period two years. This amendment would seem to have been overlooked by the Marshal in drawing his certificate and deed. If this was not the occasion of the error, the Marshal must have supposed the sale to come under the provisions of the Revised Statutes of 1846, which fix the period of redemption at one year.—*Rev. Stat. of* 1846, § 13, *Ch.* 79, *Title* 18. But this statute could not apply, as it had neither been adopted by act of Congress, nor the rule of Court as to such cases.—*Beers v. Haughton,* 9 *Pet.* 329; *Catherwood v. Gapete,* 2 *Curtis C. C. R.* 94; *Hopkins' case, Ibid.* 567. By rule 68 of the Circuit Court (November term, 1838), it will be seen that the Revised Statutes of 1838 on this subject were adopted, and by an amendment of this rule July 20, 1840, the amendment of statutes by the act of 1839, was, in effect, adopted. But we have not relied upon this rule, because,

being prior to the act of Congress of 1842, the power thus to adopt State statutes might be questioned. In any view, therefore, we have been able to take of the case, the deed was void for want of power in the Marshal to execute it. The complainant's case would not therefore be helped by an amendment stating the deed which was in proof.

The complainant, therefore, not having obtained Lee's right in the land, does not stand in a position to question the deed from Lee to Wing & McCauley, nor that from them to Arnold.

The decree must be set aside, and the bill dismissed with costs to the defendants, of both courts.

MANNING and CAMPBELL JJ. concurred.

MARTIN CH. J. concurred in the result.