# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

HAKSLUOTO v MT CLEMENS REGIONAL MEDICAL CENTER

Docket No. 153723. Argued April 12, 2017 (Calendar No. 1). Decided June 27, 2017.

Jeffrey and Carol Haksluoto filed a medical malpractice claim in the Macomb Circuit Court against Mt. Clemens Regional Medical Center, General Radiology Associates, PC, and Eli Shapiro, DO, for injuries Jeffrey sustained after he was misdiagnosed in Mt. Clemens's emergency room on December 26, 2011. Plaintiffs mailed a notice of intent (NOI) to file a claim on December 26, 2013, the final day of the two-year statutory period of limitations. Plaintiffs filed their complaint on June 27, 2014, which was 183 days after service of the NOI. Defendants moved for summary disposition under MCR 2.116(C)(7), arguing that the suit was barred by the two-year statute of limitations. The court, Peter J. Maceroni, J., denied defendants' motion. Defendants appealed, and the Court of Appeals, CAVANAGH, P.J., and RIORDAN and GADOLA, JJ., reversed, holding that MCR 1.108—the rule concerning the calculation of time—was best understood to signify that the 182-day notice period began on December 27, 2013—the day *after* plaintiffs served the NOI—and expired on June 26, 2014, which meant that the notice period did not commence until one day after the limitations period had expired, and therefore filing the NOI on the last day of the limitations period failed to toll the statute of limitations. 314 Mich App 424 (2016). The Supreme Court granted plaintiffs' application for leave to appeal to consider whether plaintiffs' NOI tolled the statute of limitations and whether plaintiffs' complaint filed the day after the notice period ended was therefore timely. 500 Mich 892 (2016).

In a unanimous opinion by Chief Justice MARKMAN, the Supreme Court *held*:

The limitations period for medical malpractice actions set forth in MCL 600.5805(6) is tolled when the NOI is filed on the last day of the limitations period. A timely NOI preserves the whole day the NOI is filed as a day to be used once the limitations period begins running after the notice period ends.

1. Under MCL 600.5805(6), the limitations period for a medical malpractice action is two years. MCL 600.2912b(1) requires that a prospective medical malpractice plaintiff provide a potential defendant at least 182 days of notice prior to filing suit. MCL 600.5856(c) provides that mailing an NOI tolls the statute of limitations at the time notice is given in compliance with the applicable notice period under MCL 600.2912b if during the notice period a claim would be

barred by the statute of limitations.  Therefore, the NOI only tolls the statute of limitations if there is time remaining in the limitations period to toll.  However, as a general proposition, Michigan rejects fractions of a day, and because the NOI in this case was filed on the final day of the limitations period—which meant that only a fraction of a day was left in the limitations period—the determination of whether any time remained to toll the statute of limitations depended on the determination of whether to round the fraction of a day up to a whole day remaining or round down to no days remaining in the limitations period.

2.  The law of fractional days has two relevant strands: how time periods are counted and how fractional days are rounded off.  With regard to how time periods are counted, MCL 8.6 and MCR 1.108(1) provide that, in computing a period of time, the first day is excluded and the last day is included.  The method of excluding the first day and including the last in calculating a period of time is tantamount to a common-law principle given its consistent application in all contexts since Michigan's origins; the rationale for this method is to ensure that parties receive the entire amount of time to which they are entitled.  Because only whole days are counted so as to ensure that the amount of time being provided to the "user" of the time consists of the entire amount of time the law allows, the user of the time receives as many whole days as are allowed under the statute—in this case, 182 days—plus the fractional day that initiates the time period.  Accordingly, in this case, once the NOI was filed on December 26, 2013, "day 182" was June 26, 2014; the notice period ran for 182 whole days plus whatever fraction of the day was left on December 26, 2013, when the NOI was placed in the mail.

3.  However, the law of counting time provided no answer as to whether the limitations period should be treated as having any time left to toll when there was only a fraction of a day remaining in the limitations period.  The law relating to the rounding off of fractional days was used to resolve this question.  The touchstone of the common law is that fractional days must be rounded off in a way that accords with common understanding and is consistent with prevailing social customs, practices, and expectations.  Because the Court of Appeals' conclusion would leave a plaintiff who filed an NOI before the expiration of the limitations period "deadlocked," such a conclusion could not be countenanced.  Consequently, a timely NOI preserves the day the NOI is filed as a day to be used once the limitations period begins running after the notice period ends.  This applies to any NOI that triggers tolling under MCL 600.5856(c), whether filed on the final day of the limitations period or on some earlier day.  Once the notice period ends and the time for the plaintiff to bring a claim once again begins to run, it will run for the number of whole days remaining in the limitations period when the NOI was filed, plus one day to reflect the fractional day remaining when the NOI itself was filed.  Therefore, when an NOI is filed on the final day of the limitations period, the next business day after the notice period expires is an eligible day to file suit.

4.  In this case, plaintiffs filed the NOI on the final day of the limitations period, December 26, 2013, which preserved that entire day for use when the 182-day notice period finally expired.  Consequently, the NOI tolled the limitations period, leaving one day for plaintiffs to file their complaint after the notice period ended.  Plaintiffs had to wait the entire 182 days of the notice period so as to provide defendants the entire 182 days of notice to which they were entitled.  In this case, plaintiffs had to wait 182 days as calculated by MCR 1.108(1),

meaning that plaintiffs had to wait until June 26, 2013, was over before using whatever time remained in the period of limitations—in this case, one day, June 27, 2013—to file their complaint. Because plaintiffs filed their complaint on June 27, 2013, plaintiffs' complaint was timely filed.

Reversed and remanded.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

FILED  June 27, 2017

S T A T E   O F   M I C H I G A N

SUPREME COURT

JEFFREY HAKSLUOTO and
CAROL HAKSLUOTO,

      Plaintiffs-Appellants,

v                                No. 153723

MT. CLEMENS REGIONAL MEDICAL
CENTER, a/k/a McLAREN MACOMB,
GENERAL RADIOLOGY ASSOCIATES,
PC, and ELI SHAPIRO, D.O.,

      Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, C.J.

The Revised Judicature Act (RJA), MCL 600.101 *et seq*., requires that a prospective medical malpractice plaintiff provide a potential defendant at least 182 days of notice prior to filing suit.  If a plaintiff files a notice of intent (NOI) to file a claim before the limitations period for the malpractice action expires, but the limitations period for the malpractice action would otherwise expire during the 182-day notice period, the

statute of limitations for the malpractice action is tolled for the duration of the notice period.  In this case, we consider whether the limitations period is tolled when the NOI is filed on the last day of the limitations period, leaving no whole days of the limitations period to toll.  We conclude that the limitations period *is* tolled under such circumstances.  As a result, we further conclude that plaintiff's complaint, which was filed the day after the notice period ended, was timely, and we reverse the contrary decision of the Court of Appeals.

## I.  FACTS AND HISTORY

On December 26, 2011, plaintiff Jeffrey Haksluoto[1] went to the emergency room at defendant Mt. Clemens Regional Medical Center, complaining of abdominal pain and various forms of gastrointestinal distress.  He was given a CT scan that was interpreted by defendant Dr. Eli Shapiro as being unremarkable, and plaintiff was sent home.  Plaintiff went back to the emergency room on January 6, 2012, at which time, he asserts, he was correctly diagnosed, prompting emergency surgery.  Plaintiff now alleges that Dr. Shapiro misinterpreted the CT scan on December 26 and that if it had been properly interpreted, his condition would have been detected sooner and addressed rather than worsening.

It is undisputed that the end of the limitations period for plaintiff's medical malpractice claim was December 26, 2013.  Plaintiff served his NOI on that very date, the final day of the limitations period.  After waiting 182 days from December 26, 2013,

---

[1] His wife, Carol Haksluoto, is also a named plaintiff, claiming loss of consortium.  For ease of reference, this opinion will refer to plaintiff in the singular form.

2

plaintiff then filed his complaint on the "183rd day," June 27, 2014. Shortly after he filed his complaint, defendants filed a motion for summary disposition, arguing that the suit was time-barred, but the trial court denied the motion.

The Court of Appeals reversed. *Haksluoto v Mt Clemens Regional Med Ctr*, 314 Mich App 424; 886 NW2d 920 (2016). The panel held that MCR 1.108-- the rule concerning the calculation of time-- is best understood to signify that "the 182-day notice period began on December 27, 2013-- the day *after* plaintiffs served the NOI on December 26, 2013-- and expired on June 26, 2014." *Id*. at 432. Because this meant that "the notice period did not commence until one day *after* the limitations period had expired," the Court felt "constrained to conclude that filing the NOI on the last day of the limitations period was not sufficient to toll the statute of limitations . . . ." *Id*. at 432-433. The Court acknowledged "that [its] analysis means that a plaintiff who serves an NOI on the last day of the limitations period is legally incapable of filing a timely complaint and is, in effect, deadlocked from timely filing a suit in compliance with both the statutory notice period and the statute of limitations." *Id*. at 433. We granted leave to appeal to consider whether plaintiff's NOI tolled the statute of limitations and whether the instant complaint filed the day after the notice period ended was therefore timely. *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 892 (2016).

## II. STANDARD OF REVIEW

This Court reviews motions for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendants' motion for summary disposition in the trial court was brought under MCR 2.116(C)(7). All well-pleaded

3

allegations are viewed in the light most favorable to the nonmoving party unless documentary evidence is provided that contradicts them. *Patterson v Kleiman*, 447 Mich 429, 434; 526 NW2d 879 (1994). Substantively, this case requires us to interpret the meaning of statutes and court rules, which are reviewed de novo. See *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). Similarly, "[t]he applicability of a legal doctrine [constitutes] a question of law. This Court reviews questions of law de novo." *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). See also *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010) ("The interpretation and applicability of a common-law doctrine is also a question that is reviewed de novo.").

## III. ANALYSIS

### A. LEGAL BACKGROUND

The parties' arguments and the Court of Appeals' decision both draw upon certain provisions of the RJA and upon our court rule on calculating time periods. The limitations period for a medical malpractice action is two years. MCL 600.5805(6). The RJA also imposes a notice requirement on prospective medical malpractice plaintiffs:

> [A] person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced. [MCL 600.2912b(1).]

Michigan employs a "mailbox rule" for providing this notice of intent. See MCL 600.2912b(2) ("Proof of the mailing constitutes prima facie evidence of compliance" with the NOI requirement.). The RJA also provides that mailing an NOI tolls the statute of limitations

4

> [a]t the time notice is given in compliance with the applicable notice period under [MCL 600.2912b], if during that period a claim would be barred by the statute of limitations . . . . [MCL 600.5856(c).]

Plaintiff here mailed the required NOI on the final day of the limitations period: December 26, 2013. Plaintiff argues that, because MCL 600.5856(c) provides that the limitations period is tolled "[a]t the time notice is given," the limitations period was tolled at that point. Because there was some time remaining on the clock (that portion of December 26 that had not yet elapsed), plaintiff argues that we must "round up" and afford him a whole day on which to file his complaint after the notice period has ended. Defendants and the Court of Appeals, by contrast, point to MCR 1.108(1), which provides that in computing periods of time, "[t]he day of the act, [or] event, . . . after which the designated period of time begins to run is not included." Defendants argue that because the day of the act or event "is not included," the notice period did not begin until December 27, 2013, the day after the limitations period ended. Since the limitations period is tolled under MCL 600.5856(c) only when the limitations period is going to expire *during* the notice period, that notice period did not begin until *after* the limitations period ended, and therefore "there was nothing left to toll," *Ligons v Crittenton Hosp*, 490 Mich 61, 90; 803 NW2d 271 (2011), rendering plaintiff's complaint untimely.[2]

---

[2] Both parties essentially assume the conclusion of their respective arguments. It is undoubtedly true that the NOI was filed at some point before the end of December 26, 2013, and that December 27, 2013, was "day one" for purposes of the 182-day notice/tolling period. However, contrary to defendants' argument and the position of the Court of Appeals, identifying "day one" offers little illumination as to the legal consequences of the unexpired portion of December 26 that remained when plaintiff filed his NOI. By the same token, while it is true that the RJA provides that tolling begins "[a]t the time notice is given," plaintiff also begs the question when he argues that this language necessarily rendered timely his complaint filed on "day 183."

As a general matter, "the relevant sections of the Revised Judicature Act comprehensively establish limitations periods, times of accrual, and tolling for civil cases." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 390; 738 NW2d 664 (2007). "[T]he Legislature intended the scheme to be comprehensive and exclusive." *Id*. at 391. Consequently, any deviation due to tolling from the two-year limitations period for malpractice actions is only as provided by statute, such as in MCL 600.5856(c). That tolling provision states that tolling begins "[a]t the time notice is given," so long as the limitations period would otherwise expire during the notice period. Thus, we stated in *Driver v Naini*, 490 Mich 239, 249; 802 NW2d 311 (2011), that "[w]hen a claimant files an NOI with time remaining on the applicable statute of limitations, that NOI tolls the statute of limitations . . . ." Because it is undisputed that the notice here was filed on the final day of the limitations period (but before that final day ended), MCL 600.5856(c) has ostensibly been satisfied so as to trigger tolling.

However, as a general proposition, "[o]ur law rejects fractions of a day . . . ." *Warren v Slade*, 23 Mich 1, 3 (1871). To "reject"-- or disregard-- the remaining fraction of a day means we must either round up to a whole day remaining, or round down to no days remaining. *Driver* makes clear that tolling is contingent on there being time left to toll. Given that the instant NOI was filed on the final day of the limitations period, if we were to round down, the NOI would not trigger tolling because there would be no time left to toll. Therefore, to know whether there was any time left to toll and hence whether tolling was triggered, we must determine whether we round up or round down. While the Legislature certainly has the power to abrogate the common-law rule disregarding fractions of a day, see *Cohen v Supreme Sitting of the Order of the Iron Hall*, 105 Mich

6

283, 288; 63 NW 304 (1895) ("In the *absence* of any statute recognizing fractions of days, it has been held that all judgments entered on the same day will be regarded as if entered at the same time.") (emphasis added), MCL 500.5856(c) does not do so. Therefore, the fundamental question we confront here is whether less than a whole day remaining in the limitations period qualifies as "time remaining on the applicable statute of limitations" as required by *Driver* to trigger tolling. In other words, while MCL 600.5856(c) provides that the limitations period is tolled "[a]t the time notice is given," if the NOI is served on the final day of the limitations period and only a fraction of a day is left, can that fractional day be tolled? This is surprisingly a question of first impression in this state. None of our caselaw squarely answers the question.[3] Rather, we must turn to the law of fractional days.

---

[3] Both parties invite us to look to passing remarks in our prior opinions that are consistent with either plaintiff's or defendants' arguments. For example, plaintiff points to *Tyra v Organ Procurement Agency of Mich*, 498 Mich 68, 76; 869 NW2d 213 (2015), in which we characterized an NOI sent on the final day of the limitations period as "timely"; while the plaintiff's complaint there was ultimately disallowed as having been filed before the notice period had ended, plaintiff notes that we raised no concerns that the plaintiff would have been "deadlocked" had she not waited for the end of the notice period. However, this is nonbinding dicta. See *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011) ("Obiter dicta are not binding precedent."). The issue in *Tyra* was whether the complaint was filed *prematurely*, not whether the NOI filed on the final day of the limitations period succeeded in tolling the running of the statute of limitations.

Defendants point us, for example, to our order denying leave in *Dewan v Khoury*, 477 Mich 888 (2006). There, the plaintiff filed the NOI on the final day of the limitations period, waited 182 days, which ended on a Friday, and then filed suit on the following Monday. The Court of Appeals held that the complaint was untimely because the notice period did not begin until the day after the NOI was served, signifying that the notice period did not begin during the limitations period and thus there was no limitations period left to toll. We denied leave to appeal. However, denials of leave to appeal do not establish a precedent. See MCR 7.301(E) ("The reasons for denying leave to appeal . . . are not to be regarded as precedent."); *Tebo v Havlik*, 418 Mich 350, 363 n 2;

7

## B.  LAW OF FRACTIONAL DAYS

While it is well established that fractional days are to be disregarded, to assert this affords little insight as to how to go about *implementing* such disregard.  We must determine whether this disregard is or is not consistent with recognizing that the instant NOI was filed before the end of the day on December 26, 2013, and if we do take such note, what effect the unexpired portion of the day had on plaintiff's subsequent filing options.  The parties spend considerable effort disputing the significance of MCR 1.108(1) on this case, but that rule deals with only a single aspect of how fractional days are regarded-- how time periods are *counted* in relation to fractional days.  The law of fractional days, however, has two relevant strands of analysis-- how time periods are counted and how fractional days are rounded off.

### 1.  COUNTING TIME

The law regarding how time is counted is currently codified in two overlapping provisions.  Among our statutes, MCL 8.6 provides that, "[i]n computing a period of days, the first day is excluded and the last day is included."  Relatedly, MCR 1.108(1) provides that, "[i]n computing a period of time prescribed or allowed by these rules, by court order, or by statute . . . [t]he day of the act, [or] event, . . . after which the designated period of time begins to run is not included," but "[t]he last day of the period is included . . . ."[4]  This method of excluding the first day and including the last day has

343 NW2d 181 (1984) (opinion by BRICKLEY, J.) ("A denial of leave to appeal has no precedential value."); *Frishett v State Farm Mut Auto Ins Co*, 378 Mich 733, 734 (1966) (When denying leave to appeal, "the Supreme Court expresses no present view with respect to the legal questions dealt with in the opinion of the Court of Appeals.").

[4] The apparent overlap of the statute with the court rule was previously recognized in

been codified within our court rules in some version since Michigan's origins. Our current court rule is essentially a restatement of its predecessor, GCR 1963, 108.6, which, in turn, was a broadened version of *its* predecessor, Court Rule No. 9, § 1 (1945).[5] Court Rule No. 9, § 1 (1945) applied this method of excluding the first day and including the last to time periods that ran from the service of various court documents; however, the same method was used for time periods under statutes as a matter of common law. See, e.g., *Gorham v Wing*, 10 Mich 486, 496 (1862) ("When time is to be computed *from* the time of an act done, we think the more reasonable rule is that the day on which the act is done is to be excluded from the computation[.]"). Thus, although the method of excluding the first day and including the last was not *codified* as to statutory time periods until the 1963 court rules, it nonetheless has consistently been applied in all contexts because it "best accords with the common understanding and is least likely to lead to mistakes in the application of statutory provisions." *Griffin v Forrest*, 49 Mich 309, 312; 13 NW 603 (1882). The fact that the same method prevails whether implemented by

---

*Beaudry v Beaudry*, 20 Mich App 287, 288; 174 NW2d 28 (1969).

[5] "The day on which any rule shall be entered, claim of appeal filed, or order, notice, pleading or papers served shall be excluded in the computation of the time for complying with the exigency of such rule, order or notice, pleading or paper, and the day on which a compliance therewith is required shall be included . . . ." A version of the rule has been in continuous effect since Michigan's origins as a state. See Court Rule No. 9 (1933); Court Rule No. 9 (1931); Supreme Court Rule No. 25 (1916); Circuit Court Rule No. 5 (1916); Supreme Court Rule No. 25 (1897); Circuit Court Rule No. 36(a) (1897); Supreme Court Rule No. 7 (1858); Circuit Court Rule No. 15 (1858); Supreme Court Rule No. 7 (1853); Circuit Court Law Rule No. 14 (1853); Supreme Court Rule No. 7 (1843); Circuit Court Law Rule No. 9 (1843); Court Rule No. 21 (1834).

9

court rule or as simply a matter of historical practice suggests that the rule excluding the first day and including the last is tantamount to a common-law principle.[6]

The rationale for this method of excluding the first day and including the last in calculating a period of time is to ensure that parties receive the entire amount of time to which they are entitled. Consider, for example, *Dousman v O'Malley*, 1 Doug 450 (Mich, 1844), which applied a statutory ancestor of MCL 8.6. Under 1838 RS pt 1, tit 1, ch 1, § 3, ¶ 11, "[a]ny specified number of days [was to be] construed to mean entire days, excluding any fraction of a day[.]"[7] *Dousman* applied the method to 1840 PA 45, § 3, which required that a certain "citation . . . be served three days at least, before the return day thereof . . . ." In *Dousman*, the citation had been served on March 29, 1843, with a return date of April 1, and we said that this was insufficient because the statutory "rule of construction would exclude the day of service, that being but the fraction of a

---

[6] Cases applying the method without recourse to any positive law authority include *Wesbrook Lane Realty Corp v Pokorny*, 250 Mich 548, 550; 231 NW 66 (1930) ("The general rule . . . is to exclude the day from which the notice begins to run and include that of performance."), *Gantz v Toles*, 40 Mich 725, 728 (1879) ("The general rule in regard to notices which has always prevailed in this State includes the day of performance and excludes the day from which notice begins to run."), and *Gorham*, 10 Mich at 496 (applying rule excluding first day and including last day to redemption period). On the other hand, in *Anderson v Baughman*, 6 Mich 298 (1859), we looked to Supreme Court Rule No. 7 (1858) rather than more generally invoking the "practice" of the Court. See also Computation of Time, 9 Opinions of the US Attorney General 131, 132-133 (March 10, 1858) ("It is the universal rule, in the computation of time for legal purposes, not to notice fractions of a day . . . .").

[7] This requirement was not retained in the Revised Statutes of 1846, and an analogous requirement was not reintroduced to our statutory law until the Legislature adopted MCL 8.6 in 1966. As this history makes clear, however, the same requirement has been in our court rules, and enforced as a matter of practice in our caselaw, the entire time.

10

day; and, but two entire days having intervened, between the day of service and the return day of the citation, the service was clearly insufficient." 1 Doug at 451. In other words, when a party is afforded a certain number of days, that period is construed as a certain number of whole days, excluding the day which triggered the running of the period, to ensure that the party receives all of the time to which he or she is entitled. We apply a similar principle in the medical malpractice realm, requiring that a plaintiff wait the entire 182-day notice period before filing a complaint. See *Tyra v Organ Procurement Agency of Mich*, 498 Mich 68, 94; 869 NW2d 213 (2015).

Defendants argue that because our method of counting days excludes the first day, the notice period does not begin until the day after the notice was served, which was "day one" of the notice period under our counting rule. However, investing this much significance into identifying "day one" is inconsistent with *Dunlap v Sheffield*, 442 Mich 195, 200 n 5; 500 NW2d 739 (1993), in which we noted that "if the period was measured in days, *it would begin on the date of the accident*" because MCR 1.108(1) "only indicates that the 'day counter' will not register a '[one]' until the day after the accident." (Emphasis added.) *Dunlap* thus establishes that "day one" is not the same as the day that the period begins running. The day counter is a method by which we ensure that the party afforded a particular amount of time is provided that *entire* amount of time. As we held in *Dousman*, only whole days are counted so as to ensure that the amount of time being provided to the "user" of the time consists of the entire amount of time the law allows for, which the user of the time essentially receives in *addition* to the fractional day that initiates the time period. In the context of this case, once the NOI was filed on December 26, 2013, "day 182" was June 26, 2014. Because Michigan uses a mailbox

11

rule for NOIs, MCL 600.2912b(2), the notice period ran for 182 whole days *plus* whatever fraction of the day was left on December 26, 2013, at which time the NOI was placed in the mail.

In sum, the law of counting time indicates that the first fractional day-- i.e., the day that triggers the running of the time period-- is excluded, while the last day is included, based on common-law notions of fairness. After all,

> [i]f a man is given a certain number of days after an event in which to perform an act or claim a right, he is likely to understand that he is allowed so many *full* days, and would be surprised if told that the fragment of the day on which the event took place was to be taken into the account against him. [*Griffin*, 49 Mich at 312 (emphasis added).]

Thus, in reckoning the end of the 182-day notice period, we exclude the day on which the NOI was served to ensure that *defendants* receive 182 whole days of notice. The law of counting time tells us how long plaintiff had to wait before filing his complaint to ensure that defendants received every moment of the notice to which they were entitled. What the law of counting time does *not* explain is the legal consequence of the NOI filed on the final day of the limitations period and the effect of the unexpired fraction of the day on plaintiff's options once the notice period ended. In other words, the law of counting time provides no answer as to whether the NOI, which was filed with less than an entire day remaining in the limitations period, tolled that period, in that it provides no answer as to whether the limitations period should be treated as having any time left to toll if there is only a *fraction* of a day remaining. To resolve this, we must look to our law relating to the rounding off of fractional days.

## 2. ROUNDING FRACTIONAL DAYS

As already noted, our law disregards fractions of a day. *Warren*, 23 Mich at 3. This concept is not specific to Michigan but is instead a general feature of the common law. See, e.g., *McGill v Bank of US*, 25 US (12 Wheat) 511, 514; 6 L Ed 711 (1827) ("[T]he law makes no fractions of a day."). Indeed, this proposition predates even American independence. Blackstone provided "a short explanation of the division and calculation of time by the English law," in which he observed that "[i]n the space of a day all the twenty four hours are usually reckoned; the law generally rejecting all fractions of a day, in order to avoid disputes." 2 Blackstone, Commentaries on the Laws of England, pp **140-141. As we have expressed the principle, "[A]ny act done in the compass of [a day] is no more referable to any one, than to any other portion of it, but the act and the day are co-extensive[.]" *Warren*, 23 Mich at 3. This establishes that there is no need to inquire into precisely *when* on December 26, 2013, plaintiff filed his NOI. Instead, the fact that it was filed at some point or another on that day is all that matters, with the legal consequence of that action being the same regardless of the precise point in the day when it occurred. But what consequence, if any, should attach to the act of filing the NOI on the final day of the limitations period? Should we "round *down*" and treat the NOI filed on the final day as ineffective at tolling for want of any time left to toll, or should we "round *up*" and treat the NOI as having tolled, and preserved, the date on which the NOI was filed for use once the notice period ended?

A system that disregards fractions of a day and trades only in whole days-- a system in which fractional days are rounded off in some fashion-- will necessarily result in parties getting somewhat more, or somewhat less, time than they would have received

13

if the calculation of time had taken notice of hours and minutes. This effect has caused some confusion as to how "edge" cases such as the instant one should be treated.

> Now, in several of these cases, the actual result of the rule . . . may be, under given circumstances, to give the party one day more than the statute time in which to bring suit, inasmuch as he would be legally entitled to act on the very day of the event from which the time is computed, if that event took place at an hour of the day which, would permit of action; but, on the other hand, the opposite rule . . . would, under other circumstances, give him one day less than the statute time, and if that time was one day only, would give him no time at all. There is good reason, therefore, in the rule . . . of treating the day of the act or event as a point of time only, and excluding it altogether from the computation. [*Id*. at 5.]

We ultimately decided in *Warren* to err on the side of affording parties somewhat *more* time rather than somewhat *less*-- to "round up" rather than "round down"-- because this was consistent with "the preponderance of American authority," which "harmonize[d] with the mode of computing time under rules of practice," making it "less likely [that] those who are to act . . . [are] deceived and misled in their action." *Id*. at 6.

The touchstone of the common law, therefore, is that fractional days must be rounded off in a way that accords with common understanding and is consistent with prevailing social customs, practices, and expectations. We recently reaffirmed this principle in *People v Woolfolk*, 497 Mich 23; 857 NW2d 524 (2014). The common-law rule that fractions of a day were disregarded was traditionally applied to mean that a day was considered over as soon as it began; accordingly, a person was considered to have arrived at a particular age on the day before his or her birthday. We rejected this rule as inconsistent with "the prevailing customs and practices of the people" to conclude that a person did not advance to their next year of age until his or her actual birthday. *Id*. at

14

26-27. This establishes an altogether sensible rule that, in disregarding fractions of a day, we do not consider a day to be over until it is *entirely* over.

If, as we said in *Warren*, "any act done in the compass of [the day] is no more referable to any one, than to any other portion of it," we can just as easily say that, in disregarding fractions of a day, an act taken on a particular day can be construed as though either the day had not yet begun or was entirely over. If our rule is that a day is not over until it is *entirely over*, then we have effectively decided to construe our disregarding of fractional days, at least in this context, as though the day had *not yet begun*-- to, in effect, "round up" rather than down. If we were to analogize days to beads on an abacus, in disregarding fractions of a day, we keep the beads on one end of the wire or the other rather than measuring intermediate locations, and we do not move the bead from one end of the wire to the other until the day is *completely* over. But this does not mean that we are incapable of identifying when a bead has been shifted over and when it has not; it is not inconsistent with our disregard of fractional days to take note that December 26, 2013, was only partially exhausted when the NOI was mailed. But with the day not yet over, the bead was not yet advanced. Thus, we first take notice of the fact that the day was not yet over when the NOI was filed, and second, that the NOI filed on that day preserved that *entire* day for use when the 182-day notice period finally expired.

In reaching a contrary conclusion, the Court of Appeals acknowledged that its resolution of the case meant that a plaintiff who filed an NOI on the final day of the limitations period was "deadlocked." *Haksluoto*, 314 Mich App at 433. It is hard to see how a conclusion that a plaintiff could end up "deadlocked" before the limitations period expires accords with "common understanding," which we expressed as the governing

15

standard in *Griffin*. Indeed, this Court has specifically acknowledged this concern when it stated that "[t]he Legislature surely did not intend its tolling provision as a trap for the unwary . . . ." *Omelenchuk v City of Warren*, 461 Mich 567, 576 n 19; 609 NW2d 177 (2000), overruled in part on other grounds by *Waltz v Wyse*, 469 Mich 642 (2004). Leaving a plaintiff "deadlocked" when that plaintiff files an NOI before the limitations period expires seems as if it is the epitome of a "trap for the unwary," and it cannot be countenanced here.

We hold, therefore, that applying our common-law jurisprudence of fractional days produces a conclusion that a timely NOI preserves the day the NOI is filed as a day to be used once the limitations period begins running after the notice period ends. Notably, this applies to any NOI that triggers tolling under MCL 600.5856(c), whether filed on the final day of the limitations period or on some earlier day. The rule is that once the notice period ends and the time for the plaintiff to bring a claim once again begins to run, it will run for the number of *whole days* remaining in the limitations period when the NOI was filed, *plus* one day to reflect the fractional day remaining when the NOI itself was filed. There is no principled reason to treat the last day differently from any other-- the abacus bead does not slide over until the day is over, and that applies with equal force to the ultimate and penultimate days of the limitations period.

The rule we adopt here has been used in Michigan before. In *Crockett v Fieger Fieger Kenney & Johnson, PC*, unpublished per curiam opinion of the Court of Appeals, issued October 28, 2003 (Docket No. 240863), the claim accrued on April 10, 1996. The Court stated:

16

> Assuming *arguendo* the notice of intent had been sent on April 10, 1998 [the last day of the limitations period], the limitations period would have been tolled until Friday, October 9, 1998 . . . , and *suit would have* [*had to have*] *been filed by the following Monday* . . . . [*Id*. at 2 (emphasis added).]

This is precisely the result we endorse here-- when an NOI is filed on the final day of the limitations period, the next business day after the notice period expires is an eligible day to file suit.[8]

As noted, this rule applies whether the NOI is filed on the final day of the limitations period or some day before the final day. Either way, if it is filed at a point at which tolling will occur, the remaining period preserved for plaintiff to use once the notice period ends comprises the number of whole days remaining in the period of limitations when the NOI was filed, *plus* one day to reflect the fractional day remaining when the NOI is filed. Consider, in this light, the example of *Lancaster v Wease*, unpublished per curiam opinion of the Court of Appeals, issued September 28, 2010 (Docket No. 291931). There, the plaintiff filed her complaint the day before the limitations period expired and, after the notice period ended, filed her complaint not on the day immediately following the 182-day notice period ("day 183" after the NOI), but instead the day after that ("day 184" after the NOI). The Court held that her complaint was untimely. Under the rule we adopt here, that is the wrong conclusion-- the plaintiff's

---

[8] Maine has reached the same conclusion with its similar notice scheme, concluding that "the day of serving notice of claim . . . does not count in either the calculation of the period of limitations or in the calculation of the 90-day notice period," leaving the day on which notice is served as a preserved day of the limitations period once the notice period ends. *Gilbert v Maine Med Ctr*, 483 A2d 1237, 1239 (Me, 1984). See also *Woods v Young*, 53 Cal 3d 315, 326 n 3; 279 Cal Rptr 613; 807 P2d 455 (1991) ("A plaintiff who serves the notice of intent to sue on the last day of the limitations period has one day after the ninety-day waiting period to file the complaint.").

17

complaint should have been deemed timely because the one whole day remaining in the limitations period was preserved *plus* the day on which the NOI was filed.

## C. APPLICATION

As applied to the instant case, the rule is simple to implement. Plaintiff filed his NOI on the final day of the limitations period-- December 26, 2013. Because it was filed before the end of the day on December 26, 2013, some fraction of that day remained. We take notice of that fraction of the day only to the extent that we recognize that it was not yet over, and not yet having ended, our metaphorical abacus bead was not yet shifted from one end of the wire to the other. Consequently, the NOI tolled the limitations period, leaving one day for plaintiff to file his complaint after the notice period ended.

## D. PRESERVED DAY

Defendants also argue that even if plaintiff's NOI served on the final day of the limitations period successfully tolled the running of the statute of limitations, plaintiff's *complaint* was still untimely. They argue that plaintiff was required to file his complaint on "day 182"-- the final day of the 182-day notice period-- rather than on "day 183," the following day, on which he did file.[9] The RJA requires a plaintiff to wait 182 days after filing an NOI *before* filing suit. See MCL 600.2912b(1) ("[A] person shall not

___

[9] Defendants point to dicta in *Kincaid v Cardwell*, 300 Mich App 513, 524; 834 NW2d 122 (2013), in support of their argument. "This Court, of course, is not bound by Court of Appeals decisions." *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13, 23; 678 NW2d 619 (2004). Moreover, the statement in *Kincaid* that an act of malpractice must have occurred within two years and 182 days of the filing of the complaint (rather than, as we hold here, two years and 183 days) constituted dicta when the act of malpractice occurred two years and 207 days before the filing of the complaint. The distinction pertinent in the instant case was not relevant.

commence an action alleging medical malpractice . . . unless the person has given . . . written notice . . . not less than 182 days *before* the action is commenced.") (emphasis added). We have made clear that a plaintiff must wait the *entire* 182 days before filing a complaint. In *Burton v Reed City Hosp Corp*, 471 Mich 745, 754; 691 NW2d 424 (2005), we said that "the failure to comply with the statutory [notice] requirement renders the complaint insufficient to commence the action." In *Tyra*, 498 Mich at 76-77, the plaintiff's action accrued on April 4, 2008, and the limitations period therefore expired on April 4, 2010. The NOI, dated April 1, 2010, was placed in the mail on April 4, 2010. The complaint was then filed on September 30, 2010, which was 179 days after the NOI. We held that the complaint was premature and therefore legally insufficient. In doing so, we observed that "[e]ven assuming that the NOI had been sent on April 1, 2010, . . . the complaint was filed at least one day prematurely." *Id*. at 77 n 5. Under MCR 1.108(1), September 30, 2010-- the day the complaint in *Tyra* was filed-- was "day 182" after April 1, 2010. Our conclusion that a complaint on "day 182" was untimely only further emphasizes that the *entire* 182-day notice period must be over *before* a plaintiff can file a complaint. Indeed, this is precisely the rule of *Dousman*, in which the plaintiff had to wait three *whole* days *plus* the day of service before hailing the defendant into court.

In much the same fashion here, had plaintiff filed his complaint on June 26, 2013-- "day 182"-- the complaint would have been untimely and legally insufficient. Instead, he had to wait 182 days *as calculated by MCR 1.108(1)*, meaning that he had to wait until June 26, 2013, was over before using whatever time remained of the period of limitations-- in this case, one day, June 27, 2013, on which he filed the complaint.

19

Therefore, his complaint was timely filed and was legally sufficient to commence his suit.

## IV. CONCLUSION

This Court has not hesitated in the past to enforce the various notice and filing requirements related to medical malpractice actions as they are written. Where, as here, plaintiff's NOI was timely filed and he filed his complaint on the day that he preserved from the limitations period, he cannot be denied his day in court. Consequently, the decision of the Court of Appeals is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

20